## TWIN-LICK OIL COMPANY v. MARBURY.

1. A director of a corporation is not prohibited from lending it moneys when they are needed for its benefit, and the transaction is open, and otherwise free from blame; nor is his subsequent purchase of its property at a fair public sale by a trustee, under a deed of trust executed to secure the payment of them, invalid.

2. The right of a corporation to avoid the sale of its property by reason of the fiduciary relations of the purchaser must be exercised within a reasonable time after the facts connected therewith are made known, or can by due diligence be ascertained. As the courts have never prescribed any specific period as applicable to every case like the statute of limitations, the determination as to what constitutes a reasonable time in any particular case must be arrived at by a consideration of all its elements which affect that question.

3. The property in controversy in the present suit had been appropriated and used for the production of mineral oil from wells, — a species of property which is, more than any other, subject to rapid, frequent, and extreme fluctuations in value. The director who bought it committed no actual fraud, and the corporators knew at the time of his purchase all the facts upon which their right to avoid it depended. They refused to join him in it, or to pay assessments then made on their stock; and it was nearly four years thereafter when the hazard was over, and his skill, energy, and money had made his investment profitable, that any claim to, or assertion of right in, the property was made by the corporation or the stockholders. *Held*, that the court below properly dismissed the bill of complaint of the corporation, praying that the purchaser should be decreed to hold as its trustee, and to account for the profits during the time he had the property.

APPEAL from the Supreme Court of the District of Columbia.

*Mr. J. D. McPherson* and *Mr. Charles Beasten, Jr.*, for the appellants.

*Mr. Walter S. Cox* and *Mr. W. D. Davidge* for the appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

The appellant here, complainant below, was a corporation organized under the laws of West Virginia, engaged in the business of raising and selling petroleum. It became very much embarrassed in the early part of 1867, and borrowed from the defendant the sum of $2,000, for which a note was given, secured by a deed of trust, conveying all the property, rights, and franchises of the corporation to William Thomas, to secure the payment of said note, with the usual power of sale in default of payment. The property was sold under the deed

of trust; was bought in by defendant's agent for his benefit, and conveyed to him in the summer of the same year. The defendant was, at the time of these transactions, a stockholder and director in the company; and the bill in this case was filed in April, 1871, four years after, to have a decree that defendant holds as trustee for complainant, and for an accounting as to the time he had control of the property. It charges that defendant has abused his trust relation to the company, to take advantage of its difficulties, and buy in at a sacrifice its valuable property and franchises; that, concealing his knowledge that the lease of the ground on which the company operated included a well, working profitably, and by promises to individual shareholders that he would purchase in the property for the joint benefit of the whole, he obtained an unjust advantage, and in other ways violated his duty as an officer charged with a fiduciary relation to the company. As to all this, which is denied in the answer, and as to which much testimony is taken, it is sufficient to say that we are satisfied that the defendant loaned the money to the corporation in good faith, and honestly to assist it in its business in an hour of extreme embarrassment, and took just such security as any other man would have taken; that when his money became due, and there was no apparent probability of the company paying it at any time, the property was sold by the trustee, and bought in by defendant at a fair and open sale, and at a reasonable price; that, in short, there was neither actual fraud nor oppression; no advantage was taken of defendant's position as director, or of any matter known to him at the time of the sale, affecting the value of the property, which was not as well known to others interested as it was to himself; and that the sale and purchase was the only mode left to defendant to make his money.

The first question which arises in this state of the facts is, whether defendant's purchase was absolutely void.

That a director of a joint-stock corporation occupies one of those fiduciary relations where his dealings with the subject-matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, and which has received

the clearest recognition in this court and in others. *Koehler* v. *Black River Falls Iron Co.*, 2 Black, 715; *Drury* v. *Cross*, 7 Wall. 299; *Luxemburg R.R. Co.* v. *Maquay*, 25 Beav. 586; *The Cumberland Co.* v. *Sherman*, 30 Barb. 553; 16 Md. 456. The general doctrine, however, in regard to contracts of this class, is, not that they are absolutely void, but that they are voidable at the election of the party whose interest has been so represented by the party claiming under it. We say, this is the general rule: for there may be cases where such contracts would be void *ab initio;* as when an agent to sell buys of himself, and by his power of attorney conveys to himself that which he was authorized to sell. But, even here, acts which amount to a ratification by the principal may validate the sale.

The present case is not one of that class. While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation when the money is needed, and the transaction is open, and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously, and best qualified to judge of the necessity of that aid, and of the extent to which it may safely be given.

There are in such a transaction three distinct parties whose interest is affected by it; namely, the lender, the corporation, and the stockholders of the corporation.

The directors are the officers or agents of the corporation, and represent the interests of that abstract legal entity, and of those who own the shares of its stock. One of the objects of creating a corporation by law is to enable it to make contracts; and these contracts may be made with its stockholders as well as with others. In some classes of corporations, as in mutual insurance companies, the main object of the act of incorporation is to enable the company to make contracts with its stockholders, or with persons who become stockholders by the very act of making the contract of insurance. It is very true, that as

a stockholder, in making a contract of any kind with the corporation of which he is a member, is in some sense dealing with a creature of which he is a part, and holds a common interest with the other stockholders, who, with him, constitute the whole of that artificial entity, he is properly held to a larger measure of candor and good faith than if he were not a stockholder. So, when the lender is a director, charged, with others, with the control and management of the affairs of the corporation, representing in this regard the aggregated interest of all the stockholders, his obligation, if he becomes a party to a contract with the company, to candor and fair dealing, is increased in the precise degree that his representative character has given him power and control derived from the confidence reposed in him by the stockholders who appointed him their agent. If he should be a sole director, or one of a smaller number vested with certain powers, this obligation would be still stronger, and his acts subject to more severe scrutiny, and their validity determined by more rigid principles of morality, and freedom from motives of selfishness. All this falls far short, however, of holding that no such contract can be made which will be valid; and we entertain no doubt that the defendant in this case could make a loan of money to the company; and as we have already said that the evidence shows it to have been an honest transaction for the benefit of the corporation and its shareholders, both in the rate of interest and in the security taken, we think it was valid originally, whether liable to be avoided afterwards by the company or not.

If it be conceded that the contract by which the defendant became the creditor of the company was valid, we see no principle on which the subsequent purchase under the deed of trust is not equally so. The defendant was not here both seller and buyer. A trustee was interposed who made the sale, and who had the usual powers necessary to see that the sale was fairly conducted, and who in this respect was the trustee of the corporation, and must be supposed to have been selected by it for the exercise of this power. Defendant was at liberty to bid, subject to those rules of fairness which we have already conceded to belong to his peculiar position; for, if he could not bid, he would have been deprived of the only means which his

contract gave him of making his debt out of the security on which he had loaned his money. We think the sale was a fair one. The company was hopelessly involved beside the debt to defendant. The well was exhausted, to all appearance. The machinery was of little use for any other purpose, and would not pay transportation. Most of the stockholders who now promote this suit refused to pay assessments on their shares to aid the company. Nothing was left to the defendant but to buy it in, as no one would bid the amount of his debt.

The next question to be decided is, whether, under the circumstances of this case, the complainant had a right to avoid this sale at the time this suit was brought.

The bill alleges, that, both prior to the sale and since, the defendant made various declarations to other stockholders to the effect that he only designed to purchase the property for the benefit of all or a part of the stockholders; and there is some testimony to show, that, after the sale, he did propose, that, if his debt was paid by the company or the shareholders, he would relinquish his purchase.

But we need not decide whether any of these declarations raised a legal obligation to do so or not; nor whether, without such declarations, the sale and deed were voidable at the election of the complainant, — a proposition which is entitled to more consideration, resting solely on the fiduciary relations of the defendant to the plaintiffs, than on the evidence in this case of the declarations alluded to.

We need not decide either of these propositions, because plaintiff comes too late with the offer to avoid the sale.

The doctrine is well settled, that the option to avoid such a sale must be exercised within a *reasonable* time. This has never been held to be any determined number of days or years as applied to every case, like the statute of limitations, but must be decided in each case upon all the elements of it which affect that question. These are generally the presence or absence of the parties at the place of the transaction, their knowledge or ignorance of the sale and of the facts which render it voidable, the permanent or fluctuating character of the subject-matter of the transaction as affecting its value, and the actual

rise or fall of the property in value during the period within which this option might have been exercised.

In fixing this period in any particular case, we are but little aided by the analogies of the statutes of limitation; while, though not falling exactly within the rule as to time for rescinding, or offering to rescind, a contract by one of the parties to it for actual fraud, the analogies are so strong as to give to this latter great force in the consideration of the case. In this class of cases the party is bound to act with reasonable diligence as soon as the fraud is discovered, or his right to rescind is gone. No delay for the purpose of enabling the defrauded party to speculate upon the chances which the future may give him of deciding profitably to himself whether he will abide by his bargain, or rescind it, is allowed in a court of equity.

In the recent case of *Upton, Assignee* v. *Tribilcock, supra,* p. 45, it was held that the purchaser of stock in an insurance company, who had offered to rescind within two or three months because his note had been sent to a bank for collection in fraud of the agreement to the contrary, could not avail himself of that offer to let in as defence other fraudulent representations then unknown to him, when he was sued by the assignee in bankruptcy for the unpaid instalments on that stock after the bankruptcy of the company.

The authorities to the point of the necessity of the exercise of the right of rescinding or avoiding a contract or transaction as soon as it may be reasonably done, after the party with whom that right is optional is aware of the facts which give him that option, are numerous and well collected in the brief of appellees' counsel. The more important are as follows: *Badger* v. *Badger,* 2 Wall. 87; *Harwood* v. *R.R. Co.,* 17 id. 78; *Marsh* v. *Whitman,* 21 id. 178; *Vigers* v. *Pike,* 8 Cl. & Fin. 650; *Wentworth* v. *Lloyd,* 32 Beav. 467; *Follansbee* v. *Kilbreth,* 17 Ill. 522.

The cases of *Bliss* v. *Edmonson,* 8 DeG. M. & G. 787, *Prendergast* v. *Turton,* 1 You. & Coll., while asserting the same general doctrine, have an especial bearing on this case, because they relate to mining property.

The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands to-day is

worth nothing to-morrow ; and that which would to-day sell for a thousand dollars as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.

While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, frequent, and violent fluctuations in value of any thing known as property, requires prompt action in all who hold an option, whether they will share its risks, or stand clear of them.

The case before us illustrates these principles very forcibly. The officers, and probably all the stockholders, who were not numerous, knew of the sale as soon as made. As there was no actual fraud, they knew all the facts on which their right to avoid the contract depended. They not only refused to join the defendant in the purchase when that privilege was tendered them, but they generally refused to pay assessments on their shares already made, which might have paid this debt.

The defendant then had a survey made of the ground leased to the corporation, the lease being the main thing he had acquired by the sale. When the lines were extended, the lease was found to embrace a well, then profitably worked by another company. Of this piece of good luck he availed himself, and by suit and compromise he obtained possession of that well. He put more of his money into it, and changed what had been a disastrous speculation by the company into a profitable business. With full knowledge of all these facts, the appellant took no action until this suit was brought, nearly four years after the sale ; and not until all the hazard was over, and the defendant's skill, energy, and money had made his purchase profitable, was any claim or assertion of right in the property made by the corporation or by the stockholders.

We think, both on authority and principle, — a principle

necessary to protect those who invest their capital and their labor in enterprises useful but hazardous, — that we should hold that plaintiff has delayed too long.        *Decree affirmed.*