JOHNSTON *v.* STANDARD MIN. Co. *et al.*

*(Circuit Court, D. Colorado.  July 8, 1889.)*

LACHES—MINING PROPERTY.
> Complainant claimed mining property under an agreement made seven years before suit brought, which was to become effectual in the event of the other party thereto prevailing in proceedings about to be instituted by him to recover the legal title to the property from adverse claimants.  Complainant would have been the principal witness in the proceedings for the plaintiff therein.  That litigation was compromised, complainant never asserted any claim to the property, and he was informed of the compromise more than five years before bringing this suit, during which time the property was developed and shown to be of great value by defendants, who received it on the compromise, complainant not objecting to their expenditure and work on the property.  A suit was brought by complainant under the agreement several years before this suit, but it was in a court which had no jurisdiction, and was voluntarily abandoned.  *Held*, that complainant's rights were barred by laches as against defendants.

In Equity.
*Hugh Butler* and *C. S. Wilson,* for complainant.
*C. I. Thomson, C. J. Hughes, Jr.,* and *O. H. Dean,* for defendants.

HALLETT, J.  This bill was filed October 7, 1887, seven years after the transactions narrated in it; or, if it is supposed that the cause of action arose upon the settlement made by the Fulton Mining Company with the parties claiming the Smuggler No. 2 title, the bill was filed more than five years after that event.  Whether this was in good time to secure the aid of a court of equity in a cause of this nature was not presented or considered at the first hearing, and is now to be determined. The Chatfield agreement of October 12, 1880, was to become effectual "in the event of the party of the first part prevailing and succeeding in certain legal proceedings about to be instituted and commenced by the party of the first part for the vesting of the legal title in the party of the first part against persons who claim adversely to him."  The issue thus to be contested by Chatfield was between the J. C. Johnston and the Smuggler No. 2 locations, both of which were made by complainant; and of course he would be the principal witness in support of the Johnston title in any suit that might be brought as required by the agreement. Conceding that the entire burden of the litigation was to be carried by Chatfield, complainant's relation to it was such as to call for strict attention to all that was done.  As no progress could be made without his testimony, it may be assumed that he was at all times ready and anxious to ascertain what was being done by Chatfield towards acquiring title to the property.  From his own testimony it appears that he was impressed with this view of his relations to the property, for he says that in May, 1881, he went to the office of Thomson & Sayer in Leadville "and asked how the case was, and he said it was compromised; and I told him I would like to take the papers to copy them; and he gave them to me, and I took the papers and looked them over, and went down to have

them copied, and found out it would cost too much, and so didn't do it. *Question.* What papers? *Answer.* Contract between Chatfield and I, Crittenden and Adair and I, and a copy of the original grub-stake contract between Dunscombe, Seaver, and I. I supposed there was a contract between Chatfield and Thomson and Sayer, and I wanted to copy that more than anything else. I don't think that was among the papers." That he wanted "the papers" for the purpose of asserting his claim to the mine under the Chatfield agreement seems clear enough, and no sufficient reason is assigned for not doing so within some reasonable time thereafter. It is true, as his counsel says, that the compromise was not then complete; but it was in progress. The property had been conveyed to the Fulton Mining Company. Some of the Smuggler No. 2 people had come into the Fulton Company, and efforts were being made to bring in others, and this was accomplished a year later. The way in which the compromise was carried on was to give the stock of the Fulton Company to the Smuggler claimants according to their respective interests. Any proper assertion of his claim to the property, pending the compromise, would have been effectual to secure his interest without injuring other stockholders of the company.

In the cross-examination of Chatfield by complainant's counsel he testified as follows:

" *Question.* What demands, if any, did Mr. Johnston ever make upon you for his interest in that property? *Answer.* I think in 1882, at Littleton, he spoke to me and said he thought he ought to be entitled to his interest in the property; that we should have gone on and contested that case. *Q.* What did you say to him? *A.* If I recollect right, I told him we found we had no shadow of a ghost to maintain his case, and it was divided up among the stockholders, —in other words, among the claimants, Dunscomb, Seaver, Achison, and Holden. *Q.* Then this eighth interest which he was to have was divided up among them? *A.* I think that was what I told him at that time in Littleton."

There is some dispute whether this conversation was before complainant went to Wood River, in 1882, or after his return in the following year. Whatever the date may be, it was after the final settlement in April, 1882, although probably the agreement was not then entered of record in the way of dismissing suits and issuing stock of the Fulton Company. Here, again, complainant was fully informed of the settlement of the controversy, and nothing more was necessary to enable him to maintain a suit for his interest. It is said that he understood that suit could not be brought until patent was obtained; that Chatfield constantly informed complainant that the patent had not been issued, and thereby he was misled until, in 1885, he learned the truth and brought the first suit in this court. If any such belief was entertained, there was nothing in the agreement to support it. On the contrary, Chatfield agreed to convey "upon so acquiring the title, legal and equitable, to the said mine by means of the legal proceedings so about to be commenced." With the compromise of the "legal proceedings" mentioned in the agreement, complainant became entitled to his interest in the property and the patent was of no importance to him.

As showing diligence in asserting his claim complainant's suit of 1885 in this court is of little weight. It is admitted that it was misconceived in all material aspects, and it was between citizens of the same state, and therefore not within the jurisdiction of the court. It was kept on the docket for 11 months, during which it was not moved at all, and then it was voluntarily abandoned. All the evidence tends to show that, with full knowledge of his position and relation to the property, no serious effort was made by complainant to enforce the Chatfield agreement for some five or six years, during which, work on the property was carried on by the Fulton and Standard mining companies at great expense, and the value of the property was established. Under the circumstances he was bound to proceed in the enforcement of his claim within some reasonable time after his cause of action accrued. The property was held by a corporation, the shares of which in the ordinary course of business would fall into the hands of innocent purchasers. It was not known to be valuable until, by development and the expenditure of a large amount of money, it was shown to be so. The work of development was carried on for several years, first by the Fulton Company, and afterwards by the Standard Company, while complainant stood by apparently waiting for the result. Where property is of fluctuating value, and work requiring courage and energy and the expenditure of money is going on, he who would assert ownership in it must do so promptly, and share in the hazards as well as the profits of the enterprise. *Oil Co.* v. *Marbury*, 91 U. S. 587. Complainant failed in such diligence for more than five years and until the great value of the property was fully demonstrated by the defendants claiming adversely. As to the present owner of the property, the Standard Mining Company, the bill must be dismissed.

If complainant wishes to have a decree against Chatfield, several questions arise which have not been discussed at the bar; as whether, upon dismissing the bill as to a citizen of another state, the court may proceed to determine matters in issue between citizens of the same state; at what time did Chatfield's liability arise, and what does the evidence show as to the value of the property at that time. Hitherto argument has been confined to the issue between complainant and the Standard Mining Company. If the case is to be pressed against Chatfield, it is obvious that further argument will be necessary on the issue with him.