GILMER *v.* MORRIS *et al.* ·

(*Circuit Court, M. D. Alabama.* June 24, 1890.)

1. LIMITATION OF ACTIONS—PLEDGE.
  Where a pledge made to secure future advances is repudiated by the pledgee, the statute of limitations will begin to run against the pledgeor's right to recover the pledged property from the time such repudiation takes place.
2. EQUITY—LACHES—PLEDGE.
  A delay of more than five years in bringing suit to redeem pledged property does not constitute laches, where it appears that the pledgee has been guilty of breach of trust, that he still holds the pledged property, which has largely increased in value, and that complainant had previously brought suit to redeem, which had been decided against him.

In Equity. On demurrer to the bill.
*W. A. Gunter,* for complainant.
*H. C. Tompkins,* for defendants.

PARDEE, J. The bill alleges, in substance, that complainant, Gilmer, about the year 1870, being a subscriber to the capital stock of the Elyton Land Company, a corporation under the laws of Alabama, for 120 shares, of the par or nominal value of $100 per share, but issued at 50 cents

on the dollar, made an agreement with the defendant Morris that he should advance the money ($6,000) necessary to pay for said stock as required by said company, and wait upon complainant for re-payment, and hold said stock as a pledge for said repayment; that defendant Morris did pay for said stock the sum of $6,000, and the same, in pursuance of said agreement, was placed by complainant with said Morris as a pledge for the repayment of said advance, and was, to make said pledge effectual, transferred by indorsement of the certificate of stock, issued in complainant's name, to the said Morris; that shortly afterwards defendant Morris, under the direction of complainant, Gilmer, sold 60 shares of said stock for $6,000, which sum was paid to defendant Morris on the amount due him for money advanced as above stated; that the certificate for 120 shares was surrendered, and two certificates were issued, one for 60 shares, to the purchaser, and the remaining one, for 60 shares, to the complainant Gilmer; that the latter was transferred by indorsement to Morris, and placed with him, in pursuance of the original agreement, as a pledge to secure the payment of the balance of the original purchase money; that matters remained in this situation until March, 1875, up to which time defendant Morris had never transferred the stock on the books of the company to himself, when said stock was levied on as complainant's property by the sheriff to satisfy an execution against complainant on a judgment amounting to $233.60; that, upon the levy being made, he made an agreement with said Morris that he (Morris) should pay the debt and discharge the levy, and that thereupon the stock should be transferred to him on the books of the company, and he should hold the same as a pledge for payment of balance due on the original purchase, the sum to be paid to discharge the levy and all indebtedness which Gilmer or any other of the firms with which he was connected in business might incur in the future either to Morris or to the banking house of Josiah Morris & Co., of which said Morris was a member; that Morris consented to this agreement, and paid the judgment, and the 12th of July, 1885, the amount was paid to the firm of Gilmer & Donaldson, of which Gilmer was a member; that the stock was transferred on the books of the company to Morris' name prior to that date, but after said agreement was made; that prior to 1875 Gilmer had kept a bank account with the firm of Josiah Morris & Co., and in the early part of 1877 he and one Donaldson formed a partnership, and desiring to continue his banking account with Morris & Co., and to obtain from them accommodations, he arranged and agreed with Morris that the said stock should be held by him to secure the indebtedness which the firm of Gilmer & Donaldson might incur to him (Morris) or to his banking firm; that under said agreement, and up to the death of Donaldson, in 1876, the banking account of said firm was continued with the banking firm of Morris & Co., and loans and discounts were made to Gilmer & Donaldson, and at the death of Donaldson there was due to Morris & Co., and to the firm, the sum of $2,303.03; that this balance was secured, not only by the pledge of the stock, but by other security and stock deposited by Donaldson for that purpose; that,

from the securities and stock so deposited by Donaldson, Morris realized the sum of $975 on the 11th of March, 1880, which was placed to the credit of the said account, leaving a balance, which is still due and unpaid; that, after the death of Donaldson, Gilmer continued to do business, in the name of J. N. Gilmer & Co., with said Morris, until the 30th of May, 1879, when he formed a partnership with one Clanton; that during the time he carried on business in the name of Gilmer & Co., on the faith and credit of the stock held as a pledge by Morris, Josiah Morris & Co. made small advances, and, at the time of the formation of the firm of Gilmer & Clanton, there was due to the firm of Josiah Morris & Co. by Gilmer the sum of $222.43, which was afterwards paid, as follows: $230 by deposit June 8, 1881, and $52.33 by a note given on 31st day of May, 1883, and paid on the 3d of October, 1883; that after ceasing to do business with Morris & Co., under the name of J. N. Gilmer & Co., the firm of Gilmer & Clanton opened a new business and banking account with Morris; that afterwards Clanton sold out his interest to one Merritt, and a new firm, under the name of Gilmer & Merritt, continued the said business, until the same was dissolved, some time in the year 1884; that, during the course of dealings in the names of Gilmer & Clanton and Gilmer & Merritt, Morris extended credits to said firms, and made loans of money to them, from time to time, upon the faith and credit of the stock belonging to Gilmer, which had been pledged as aforesaid, but neither of said firms owed Morris any balance on the said account at the time they closed their said business; that in the early part of 1872, and up to the month of June, 1884, said Morris did not, directly or indirectly, notify Gilmer of the amount of the balances due him in said account, or require him to pay such balances; that he did not give notice to Gilmer that the stock must be redeemed, or that he had or would sell it, or was holding it otherwise than as a pledge; that said Morris continuously, from the month of March, 1875, to the month of June, 1884, held and acknowledged that he held the stock as such pledge, and that in June, 1884, complainant, Gilmer, for the first time learned that the stock had commenced paying dividends, and when he called upon Morris to inquire about it was then for the first time informed that Morris denied holding the stock as a pledge at all, and was further informed that it had been sold by Morris in the year 1881; but the bill avers that the alleged sale never was in fact made, and that defendant Morris has continued to hold the said stock. The bill prays for the recovery of the stock, and an accounting of the dividends thereof from the time of the alleged pledge. The defendants demur to the bill for want of equity, and as a stale demand; and that the complainant's suit is barred by the statue of limitation in the state of Alabama, which statute, it is alleged, applies to suits in equity as well as suits at law.

. .The bill makes a case of pledge for future advances, which were continuously made, extending over a term of years from 1875 to 1884, at which time, as alleged, a balance was due to defendant Morris, which was secured by the said pledge. The defendant Morris for the first time

alleged the sale of the pledged property, repudiated the pledge, and denied his liability in June, 1884. Where a pledge is made to secure future and continuing advances, which advances are made, the pledgeor's right of action to recover the pledged property accrues when all the advances secured by the pledge are paid, or when the pledgee, by positive act, repudiates the pledge, or improperly disposes of the pledged property. Under the facts stated in the bill, the complainant's right of action, therefore, accrued in June, 1884. It seems unnecessary, therefore, to consider in this case the statute of limitation of six years under the laws of Alabama, or to determine whether such statute has any application in a suit of equity in the courts of the United States.

Staleness of demand, by reason of laches, however, is a more serious objection, and as to time rests upon a different footing. "The growing importance of trade and commerce, with the increase of the means of rapid transit and speedy communication, have tended in modern times to shorten the period allowed by courts of equity beyond which a demand is considered stale on the ground of laches. * * * What lapse of time shall be regarded as rendering a pledgeor's right of redemption stale cannot, of course, be formulated into any fixed rule applicable to all cases. Each case must necessarily depend upon its own circumstances, having regard, not alone to the mere question of time, but also to the circumstances and relative situation of the parties, the nature of the property pledged, whether stationary or fluctuating in value, and other facts affecting the justness or equity of the right asserted. 'It is therefore,' as said by Mr. Schouler, 'largely a matter of judicial discretion.' Schouler, Bailm. 225, note 2. * * * It is well settled that a much shorter time will be allowed the pledgeor within which to exercise the right of redemption, where he seeks to make a profit out of the unexpected rise in the value of pledged stocks, than where he seeks merely to compel the pledgee to account for a surplus received by him from the sale of the stocks in ordinary cases. Schouler, Bailm. 225; *Oil Co.* v. *Marbury,* 91 U. S. 587." *Gilmer* v. *Morris,* 80 Ala. 78. "The right of a corporation to avoid the sale of its property by reason of the fiduciary relations of the purchaser must be exercised within a reasonable time after the facts connected therewith are made known, or can, by due diligence, be ascertained. As the courts have never prescribed any specific period as applicable to every case, like the statute of limitation, the determination as to what constitutes a reasonable time in any particular case must be arrived at by a consideration of all its elements which affect that question. * * * These are generally the presence or absence of the parties at the place of the transaction; their knowledge or ignorance of the sale, and of the facts which render it voidable; the permanent or fluctuating character of the subject-matter of the transaction as affecting its value; and the actual rise or fall of the property in value during the period within which this option might have been exercised." *Oil Co.* v. *Marbury,* 91 U. S. 587. "Courts of equity often treat a lapse of time less than that prescribed by the statute of limitation as a presumptive bar, on the ground 'of discouraging stale claims or gross laches or unexplained acquiescence in the assertion of an adverse right.' 2

Story, Eq. Jur. § 1520. In *Smith* v. *Clay*, Amb. 645, Lord CAMDEN said: 'A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands when the party has slept upon his rights, or acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. When these are wanting, the court is passive, and does nothing, and laches and neglect are always discountenanced.' These doctrines have received the approval of this court in numerous cases. *Oil Co.* v. *Marbury*, 91 U. S. 587; *Badger* v. *Badger*, 2 Wall. 87; *Marsh* v. *Whitmore*, 21 Wall. 178; *Harwood* v. *Railroad Co.*, 17 Wall. 79." *Hayward* v. *Bank*, 96 U. S. 611. To the same effect, see *Indianapolis Rolling-Mill Co.* v. *St. Louis, etc., R. Co.*, 120 U. S. 256, 7 Sup. Ct. Rep. 542.

By the bill it appears that five years and seven months elapsed after the defendant Morris alleged a sale of the pledged property, and repudiated all liability on account of the pledge before suit was brought to recover the pledged property. The bill alleges, and the demurrer admits, that, in fact, Morris made no sale of the stock, but still holds and possesses it, drawing large dividends thereon. The bill further shows that the stock which is the subject of the suit for a long time was below par, but since about the time of the alleged sale has risen rapidly in value, and paid large dividends, so that the claim, which in 1884 would have been for about the par value of the stock, is now alleged to amount to over $150,000. In the bill there is no explanation for the delay in bringing suit, but, as a matter of fact, it is to my personal knowledge, and has been brought to my attention in argument in this case by both sides in citing the cases of *Gilmer* v. *Morris*, 80 Ala. 78, and *Morris* v. *Gilmer*, 129 U. S. 315, 9 Sup. Ct. Rep. 289, that the complainant did institute a suit in one of the chancery courts in the state of Alabama against these same parties defendant for the recovery of this same stock; that on an adverse decision in the said chancery court, afterwards affirmed by the supreme court of the state, on the 27th of January, 1886, a suit was brought in this court on September 20, 1886, for the same stock, which suit was pending and undisposed of until the 28th day of January, 1889, when the supreme court of the United States rendered a decision adverse to the complainant, this time, however, conceded not to be upon the merits of the case. How far these conceded facts outside of the bill should be considered in ruling on the demurrer is not clear, but I think they should have some weight. Taking them in connection with the fact that the alleged sale of the stock sued for is a pretense, and that, in fact, during the delay in bringing suit no change injurious to parties has occurred, and the further fact that complainant's bill, confessed by the demurrer, shows a breach of trust, I am of the opinion, giving full force to the authorities above quoted, that the charge of staleness of demand should not be sustained. If a sale of the pledged property was actually made, so that complainant had an option to affirm or disaffirm, or if defendants have been injured or prejudiced by any laches of complainant, such state of the case can be shown in the answer and evidence.