No. 10,782.

CRESCENT CITY BREWING COMPANY VS. JOSEPH FLANNER.

The Board of Directors of a corporation has the undoubted right to sell property of the corporation to pay its debts.

But when the Board of Directors sells the property to one of the members of the board to pay debts, it must appear that there was a necessity for the sale, that the property was bought by the director in open market, at a fair price, without any undue advantage over the corporation, in good faith and without the slightest unfairness.

When the Board of Directors who sold the property made the sale necessary by its mismanagement, one of the directors on said board will not be permitted to purchase the property.

APPEAL from the Civil District Court for the Parish of Orleans.
King, J.

*Buck, Dinkelspiel & Hart* for Plaintiff and Appellee:

I.

The directors of a corporation hold to stockholders the relation of trustee and *cestui que trust*. This fiduciary relation disables them absolutely from becoming the purchasers of the property of the corporation which they represent.

II.

A private sale of valuable real estate, the property of a corporation, therefore made on a resolution of the Board of Directors consisting of five members, by a vote of three of them, to one of their own number, is, if not absolutely null and void, voidable as matter of law, without proof of fraud or unfair dealing, at the option of the *cestui que trust*. Succession of Stansborough, 37 An. 278; Michaud vs. Girod, 4 Howard 503; Waterman, Taylor and Morawitz on Corporations, cited in brief; Wardle vs. R. R. Co., 103 U. S., page 651; Jackson vs. Ludeling, 21 Wallace; European Railway Co. vs. Poor, 51 Me. 277; Sweeney vs. Grape Sugar Co., 30 W. Va. 443, and authorities cited below.

*Harry H. Hall* and *W. S. Benedict* for Defendant and Appellant:

1. The property in controversy was not purchased for the use of the brewery; was not a requirement to its successful operation, and its purchase was not originally contemplated in the scheme of the erection of the brewery.

2. The sale of the property in controversy was, as is shown by the uncontradicted testimony in this case, an absolute necessity, and alone prevented the utter insolvency of the corporation.

3. The Board of Directors referred to did not wreck the corporation. On the contrary, by the sale of the property referred to, they prevented its destruction, and, as a matter of fact, in spite of the vicissitudes through which the company passed, it never was wrecked, but paid all of its obligations and the stockholders in full, and is now, under a different name, in successful and prosperous operation.

4. The sale was fair, open, made by the advice of experienced auctioneers, wa the highest price that could be obtained, and was made in such manner as would have been adopted by a sensible man in disposing, under the circumstances, of his own property.

5. Such being the circumstances, the sale was justified by law, as well as by equity, reason and common sense. Morawitz on Private Corporations, Vol. 1, Sec. 527; 40 An. 53; 91 U. S. 590.

6. Whatever right a corporation whose property is sold by its directors may have to set aside that sale, such right is not transmissible, and can not be transferred to another corporation between whom and said Board of Directors and said purchaser there existed no privity.

The opinion of the court was delivered by

McENERY, J.   The Crescent City Brewing Company under the laws of this State, organized in 1887 as a corporation for the purpose of purchasing vacant or unimproved real estate in the city of New Orleans, and constructing thereon and conducting a brewery for the manufacture of beer and malt liquors, and for the sale of all products of the brewery.

Its capital stock was $250,000, in 2500 shares of the value of $100 each.

The powers of the corporation were executed and its business managed by a board of directors, composed of five stockholders, a majority of whom constituted a *quorum*.

In pursuance of Article 11 of the act of incorporation, on the 17th day of September, 1887, the company purchased (1) a square of ground in the second district in the city of New Orleans, designated by the municipal number 188, bounded by Canal, Customhouse, Claiborne and Robertson streets; (2) a certain piece or portion of ground, comprising about three-fourths of a square, designated by the municipal number 187, bounded by Canal, Customhouse, Robertson and Villeré streets, the whole price being $100,000.

The property last described is that in controversy.

Joseph Flanner, who purchased the above described property from the company, was a member of the *board of directors* when he made the purchase.

On the 19th of July, 1888, a special meeting of the board of directors was called for the purpose of disposing of said property.   At the meeting of the board a resolution was adopted which recited that the above property was idle capital, and it was resolved to sell the same to Joseph Flanner for the sum of $20,000.   The president was authorized to transfer the property to Flanner.   Flanner was present and voted blank, and one of the directors voted nay on the motion to adopt the resolution.

The deed was made to Flanner, and he went into possession of the property.

On the first Monday in February, 1890, a new board of directors was elected, and at its first meeting, February 3, 1890, a resolution was adopted repudiating the action of the former board in selling the property to Flanner, the former director and vice president of

the board, and authorized a tender to be made to him in conformity to law, and on his failure to re-transfer said property to the company, suit should be instituted against him for the property. The tender was duly made, and Flanner refused to accept the same and re-transfer the property. This suit was then instituted to avoid the sale to Flanner as illegal, voidable, as an unfair and suspicious transfer of property by a trustee to himself, he being one of the board of directors who derived substantial pecuniary advantage therefrom.

On the 17th May, 1890, the New Orleans Brewing Association purchased all the property and assets of the Crescent City Brewing Company. The property in controversy was conveyed among the other assets, with a recital of the pendency of this suit for its recovery, and the New Orleans Brewing Association was authorized to have itself recognized as a party plaintiff therein, to carry on the suit at its own expense, and for its own account, to final termination. It appeared in court and was subrogated and entered of record as plaintiff.

The corporation acted within a reasonable time in the institution of this suit to set aside the sale. The first board of directors, elected after the sale occurred, at its first meeting, repudiated the sale and authorized this suit.

It does not appear that any meeting of the shareholders had been called, and this sale submitted to them for ratification, nor does it appear that they had any notice of the transaction.

In a case similar to the instant one, where the relations of the parties gave rise to suspicions, this court in the case of Hancock vs. Holbrook, 41 An. 53, announced the principle of law which should govern, as follows: "As a strictly legal question, the right of a board of directors of a corporation to apply its property to the payment of its debts, and the right of the majority of the stockholders present at a meeting called for the purpose to ratify such action and to dissolve the corporation, can not be questioned.

" But when such action is taken at the instance and through the influence of the president of the corporation, and when the debt to which the property is applied is one for which he is himself primarily liable, and especially when he acquires, in his personal right, the property, thus disposed of, such circumstances undoubtedly subject his acts to severe scrutiny, and oblige him to establish that he acted with the utmost candor and fair dealing for the interest of the cor-

poration and without taint of selfish motive. Twin-Lick vs. Mar-bury, 91 U. S. 590.''

And to the same effect is the doctrine in Morawitz, Private Cor-porations, Vol. 1, Section 527, which says: "But a transaction between a director and a corporation, even if the latter was repre-sented by a majority of the board, will always be scrutinized by the courts with strictness, and will be set aside at the suit of the corpora-tion, upon proof of the slightest unfairness or imposition practised upon it.

"A director will not be allowed to obtain any advantage over the corporation, of which he is agent, through his position, on the information which he has obtained of the affairs of the corporation, or his influence over his co-directors."

The circumstances attending the sale were of that character which will not bear the above test.

It is alleged in the resolution which authorized the sale that it was idle property. The defence is that the sale was a necessity, as the affairs of the company were in a desperate condition, and it was necessary to sell the property in order to raise money to complete the brewery building.

The property was purchased for the use of the brewery as an absolute requirement to its successful operation. It was necessary to have a separate lot from the one on which the brewery building was located, under the United States revenue laws, for a bottling establishment.

This is made certain by the fact that after the property was pur-chased by Flanner, he leased a part of it to the company from which he had purchased it, for the very purpose for which it had been originally bought.

That he thought it would be necessary for the company to repur-chase it, is apparent from the declaration that he would resell to the company on reimbursement of the purchase price.

This declaration he afterward affirmed under oath in the United States Court, in the matter of the application for the appointment of a receiver.

The sale, therefore, was not advantageous to the company, but, on the contrary, was an obstacle, an embarrassment, to the success-ful operation of the brewery.

The sale does not seem to have been an imperative necessity. The outstanding subscriptions for stock had not been collected, and there were bonds of the company unsold.

But in this desperate condition of the company, before the sale of any property which was essential for its success, the stockholders should have been convened and their interest consulted.

The record shows that the wreck of the company was through the fault and mismanagement of the board of directors, who sold the property to one of its members.

This is the judicial admission made by the board in the matter of the appointment of the receiver in the United States Court. It is said that this was only a *pro forma* admission for the purpose of having a receiver appointed, but it is, nevertheless, the solemn judicial admission of the board of directors. It would be the grossest injustice to the stockholders and against the soundest principles of public policy to permit a board of directors, to whom the affairs of the corporation have been committed, under the plea of the necessity to pay the debts rendered necessary by their mismanagement, to allow them to sell the property of the corporation and to become the purchasers.

The sale was not made in open and fair market, but by agreement among the directors.

Several persons were asked to purchase the property. But in a large commercial city it would be unreasonable to suppose that the directors could, by private inquiry, exhaust the list of buyers. It would have been prudent, at least, to have fixed a minimum price on the property and offered it to the public through the usual channels for selling city property.

There were several auctioneers consulted, but it seems their advice was solicited more in the interest of protecting the purchaser than fixing a just price on the property.

That Flanner bought the property for his own interest and advantage, with a view of its speculative value, is, we think, fully disclosed in the record. According to his own statement he sacrificed in securities more than $3000 to raise the cash to pay for the property.

Subsequent events proved it a profitable investment. He refused, in accordance with his own sworn declaration, to re-transfer the property to the company and the lease of the property to the brewery, and his estimated value of $10,000 on a part of it shows

that the company lost by the sale. We do not reflect upon the motives of the directors nor of the purchaser. They had no intention of committing a fraud upon the stockholders, and no actual fraud has been committed, within the ordinary meaning of the word. They undoubtedly thought they were at the time acting for and in the interest of the corporation in the desperate condition of its affairs, and the sale of the property, ander the circumstances, would be justified.

They took the advice of their attorney, who advised the sale. But the corporation suffered an injury, nevertheless, and the relations of the parties were such that the law will not permit the slightest advantage to appear against the corporation of which the purchaser is a director. Such acts are held constructively fraudulent, and voidable at the election of the principal.

Judgment affirmed.