OLCOTT v. RICE et al.

(Circuit Court of Appeals, Fifth Circuit. June 25, 1895.)

No. 357.

**1. RESULTING OR CONSTRUCTIVE TRUST—EVIDENCE.**

Complainant, the purchaser, at a foreclosure sale, of the property, rights, and interests of an insolvent railway company, filed his bill alleging that certain real estate, the title to which had been taken in the names of the predecessors of defendants, was paid for with funds of the railway company, and was held in trust for it, and praying for a conveyance thereof to him. It appeared that the several tracts of land, lying along the line of the railway, were conveyed to certain persons, who were directors and officers of the railway company, by absolute deeds, in consideration of their personal notes; that in some cases such persons were described as "trustees"; that in one case the railway company had agreed to establish a depot on the land, if conveyed to such persons, trustees under a certain agreement; that there were certain entries in the books of the railway company tending to show that some of the notes given by said persons were paid by the railway company, but no evidence of the facts relating to such entries was given by persons familiar with them; that, some years after the purchases, the purchasers conveyed to the railway company certain lands admitted to be held in trust for it, and claimed to be all that were so held. *Held,* that complainant had failed to establish the trust alleged in his bill.

**2. EQUITY—LACHES.**

From the time of the conveyance to the railway company of the lands which were claimed by the purchasers to be all that belonged to it, no claim was made to other lands until the filing of complainant's bill, 17 years later; the stock having in the meanwhile passed into other hands, and new directors and officers having been elected. It seems that such delay constituted laches, barring the claim of complainant, who stood in no better position than the railway company.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

This was a suit by Frederick P. Olcott against Fred A. Rice, T. W. House, William C. Oliver, Elvira Hutchins, J. W. Jones, M. W. Garnett, E. P. Hill, Presley K. Ewing, Henry Brashear, and William M. Rice to establish a trust in certain lands. The circuit court dismissed the bill. Complainant appealed. Affirmed.

John G. Winter, for appellant.

Presley K. Ewing and Henry F. Ring, for appellees.

Before McCORMICK, Circuit Judge, and BRUCE, District Judge.

BRUCE, District Judge. The bill was filed December 21, 1891. It charges that the Houston & Texas Central Railway Company, a corporation created under and by the laws of the state of Texas, doing business and domiciled in said state, before the year 1888, acquired and became the owners of certain real property, which is described in the bill, and situated in different named counties in the state of Texas. The bill charges that the legal title to said property was taken in the name of A. Groesbeck, W. R. Baker, F. A. Rice, and W. J. Hutchins, who were then, and long thereafter continued to be, officers and directors of said railway company, having the charge, management, and control of its business affairs, and that

they so took the legal title as trustees, holding the property so conveyed in trust for said railway company; that is to say, the said railway company acquired and became the owner of the lands conveyed in trust for its use and benefit to the several trustees mentioned.

It is charged:

"That the Houston & Texas Railway Company heretofore executed several deeds of trust upon certain of its property acquired and to be acquired, embracing and covering the property described in the bill, and all rights and interests growing out of same, to secure the payment of its indebtedness; and thereafter the trustees, representing creditors secured by said deeds of trust, instituted then several suits in the circuit court of the United States holden in said Eastern district of Texas, at Galveston, for the purpose of foreclosing the liens under said trust deeds, which several suits were by order of said court consolidated in one suit upon the equity docket of said court, and entitled and numbered, to wit, 'Nelson A. Easton and James Rintoul, Trustees, and the Farmers' Loan and Trust Company, Trustee, v. The Houston and Texas Central Railroad Company et al.'; * * * that in pursuance of a decree entered by said court in said consolidated cause on, to wit, the 4th day of May, 1888, foreclosing the liens of the several trust deeds, and decreeing and ordering a sale of the property, rights, titles, and interests of said railway company embraced therein, Charles Dillingham, as special master commissioner, for that purpose by said court appointed, did on, to wit, 8th day of September, 1888, in accordance with the directions of said decree, sell all the property, rights, titles, and interests, both at law and in equity, of said railroad company in and to the lands hereinbefore described; * * * that at said sale your orator became the purchaser of said lands, and all the rights, titles, and interests, in law and equity, of said railroad company, in and to the same, * * * for the sum of ten million five hundred and eighty thousand dollars; and that the commissioner was directed to execute and deliver a deed of the property sold to the purchaser, which was done."

It is perhaps not necessary to state further the averments of the bill, but section 5 states the case with clearness and brevity, thus:

"Your orator further represents and avers that the lands held by said trustees as aforesaid were donations made to said railway company, or were paid for by and with moneys, credits, and properties of said railway company, and the accretions thereof, in the hands of said trustees, and by them held to be accounted for and conveyed to said railway company when thereunto demanded; and that by reason of the purchase by your orator of the interests therein of said company, as aforesaid, he is entitled to have said property conveyed to him, and to have an accounting of and concerning the management of the same, and the fruits, income, accretions, and profits thereof."

He avers that the value of the aforesaid lands, and of orator's rights and interests therein, and growing out of same, exceeds the sum of one million dollars, and in the thirteenth paragraph he states that he has demanded of said respondents, and each of them, that they account to him for the trust property received and held by them as aforesaid, and concludes with prayer for relief, general or special, as may accord with equity and good conscience.

The bill is answered by all of the defendants, and the denials are full and specific of the facts charged in the bill. The case stated in brief is, the complainant charges a trust upon the defendants, and prays for an execution of the trust. The defendants deny, and complainant is put upon his proof. It is not deemed necessary to discuss the question as to what kind or designation of trust is claimed here, whether a resulting or constructive trust. The fact

to be established is that the property in question was paid for by or out of the funds and credits of the railway company, or that it was acquired as donations to the company. The railroad was projected and built in part before the war, but not completed until afterwards. The Bryan tract is treated as the initial point in the inquiry, and is emphasized by the complainant as giving color to the after transactions of the officers of the railway company and certain named trustees to whom conveyances were made of the title to the property the subject of this litigation. The deed in the matter of what is called the "Bryan Tract" is for 640 acres of land, dated 9th April, 1860, and is for an expressed consideration "of thirty-two hundred dollars, to me in hand paid by A. Groesbeck and W. R. Baker." It appears from the testimony of Bryan that he took note of Groesbeck and Baker for the $3,200, which he says he turned over to Wm. Hendley & Co., to pay them a debt which he owed them. The evidence shows that the note was afterwards paid. The testimony of Bryan shows that he was desirous of having a depot upon the land. He says: "I won't be positive, but am satisfied that I offered to give them 320 acres of land; and I would have given them if they had not taken the 640 acres, and paid me five dollars an acre for it." It is quite clear that the testimony of Bryan does not go far to sustain the complainant's case that this Bryan tract was paid for by the means of the railroad company. It shows a purpose to have established upon the line of the railway a depot upon the tract of land, and this rendered the acquisition of depot grounds necessary for the conduct of the business of the railroad company. And it may be that this scheme was to make this tract of land the site of a town for which the establishment of a depot would be an important initial step; but it does not appear that the railroad company was going into the business of building towns or of doing aught other than the legitimate business of a railway company. In any view of this evidence, it does not sustain the complainant's contention, but rather the contrary.

Certain book entries upon the books of the railway company are relied on to show that the $3,200 note of Groesbeck and Baker was paid out of the treasury of the railroad company; but evidence of this character, apart from testimony as to the facts to which these entries relate, by witnesses who have some knowledge of the transactions other than the entries themselves upon the books of evidence at all, is not satisfactory to establish a proposition such as claimed here. Item 2 is a deed of J. J. Jackson, dated August 2, 1869, for and in consideration of the sum of $2,804, "to be paid me on the 6th day of July, 1870," by Abraham Groesbeck, W. R. Baker, W. J. Hutchins, and F. A. Rice, trustees, for which sum of money the parties named "delivered to me their joint and several promissory notes, dated August 2, 1869." This, upon the face of it, shows a straight deed of conveyance and joint notes of the grantees given for the purchase money; and the same thing, in substance, is shown in a number of the other items noted in the brief of counsel for the complainant.

Some stress is laid upon the Corsicana transaction, which shows a tract of 640 acres of land, upon which the company obligated

itself to establish a depot on the line of the road on the land, provided good and sufficient deeds of conveyance are first made and delivered to W. J. Hutchins, W. R. Baker, F. A. Rice, and A. Groesbeck, trustees, appointed by an agreement dated March 22, 1868, for the lands and lots of ground. Attention is here called to the facts that at this time (June 17, 1871) Hutchins, Baker, and Groesbeck were directors of the railway corporation; that Baker was also president, Groesbeck, vice president, and F. A. Rice, one of the trustees, was treasurer, of the railway corporation company. It appears, however, that this property, by deed of May 13, 1874, was conveyed by the trustees to the railway company for the same named consideration as is recited in deed to them in 1871. The conveyances of property except the Bryan tract were made after the 22d of March, 1868; and, with few exceptions, the deeds recited that they were made to the persons named as trustees, appointed under an agreement dated March 22, 1868. Many of these conveyances were made more than 20 years before the bill was filed; none of them later than 1875, which was 17 years before the filing of the bill. It is conceded that some of the lands of the railway company were conveyed to the trustees. It is in testimony that Groesbeck remarked on one occasion that the company did not want the title to the lands clouded by the bonds of the railway company; but it is also in testimony that these lands were all reconveyed to the railroad company, —that is, as witness Rice states, "all that the trustees conceded to belong to the railroad." It is not deemed necessary to comment upon the items in detail. They are numbered from 1 to 90, inclusive. The conveyances are all in terms of the same general character, and the book entries from the books of the railroad company are like those referred to in the case of the Bryan tract.

What, then, does such a review of the evidence disclose? It shows a railroad enterprise projected, and the road built in part before 1861, in which the actors are now, and when the bill was filed were, nearly all dead. They were the stockholders of the railroad company, formed its board of directors, and were the officers of the company. The Bryan tract transaction, in connection with what was afterwards done, and the execution of the trust agreement of March 22, 1868, and other papers in evidence, show that there was a syndicate formed to buy lands and lots along the line of the railroad, the purpose of which was to organize towns, promote their growth, and profit by the increase in the value of property resulting from the building and operation of the railroad. During the time of these transactions, from March 22, 1868, to 1874–75, the same persons largely were interested in operating the railroad, and were officers and directors of the railroad corporation, and at the same time were parties in interest in the land syndicate. It is true, the law regards with jealousy the occupying of double relations by the same persons. It was long since said, and the experience of mankind only adds force to the truth, "that no man can serve two masters." And yet, in the practical affairs of life, these double relations are frequently found to exist often from necessity, and the law does not pronounce transactions of persons in such relations void,

but only voidable, and courts will subject such transactions to greater scrutiny to see that they are honest and free from the taint of fraud. Doubtless, there is much danger in relations of this character, and it may be that the parties complained of in these transactions did sacrifice the interests of the railroad company to that of their private syndicate. But courts cannot be governed by suspicions of what parties may have done in the presence of opportunities for fraud; but the general presumption must be indulged that men charged with high and important trusts perform their duties with fidelity to these trusts, and such must be presumed until the contrary is shown by proper proof.

In 1877 one Morgan bought the main body of the stock of the road, and a new directory and management came into control of the road. In 1882 the road and its property passed into the hands of receivers appointed by the circuit court of the United States for the Eastern district of Texas, at the suit of certain bondholders, which suit resulted in a decree and sale of the railroad and property, under which complainant makes claim to the property in suit.

The result of this review is that the main proposition of the complainant is not made out by the proof, and the trust charged in the bill upon the defendants is not established under any rule on the doctrine of trusts found in the opinions of courts of last resort. Pom. Eq. Jur. § 1040; Perry, Trusts, § 137; Olcott v. Bynum, 17 Wall. 64. If this were otherwise, it would still be difficult to free this case from the rule of laches and staleness of demand. Complainant stands on no higher ground in this respect than the railroad company to the rights of which he claims to have succeeded. In 1875, the trustees conveyed to the company certain lands admitted by them to be held in trust for the company, and claiming that it was all that was so held; and from that time to the filing of the bill (December 21, 1892) is such lapse of time as does not show a case of reasonable diligence in the assertion of rights in good faith believed to exist. Oil Co. v. Marbury, 91 U. S. 587, and cases there cited.

Again, as to the comparative equities of the parties complainant and the defendants to the bill. Complainant is a purchaser at a sale under decree of the court of a large amount of property described in the mortgages which were foreclosed, and the property sold under decree of the court. The property described in this bill was not described in the mortgages which were foreclosed. But, conceding that the case falls within the rule of an equitable title to real estate subject to sale under the decree of the court, and was in fact sold, the facts show that complainant stands on no high and controlling ground in a court of equity. The defendants are successors in interest to the trustees under agreement of March 22, 1868. Some of them paid value for the interest they hold; others hold as succeeding to the rights of those who are dead; and it seems to us that the defendants not only have the title, but the equities are also in their favor.

The result is that the decree of the court below is affirmed.