Edward Earl **CLINE, Jr.**, Earline Cline Eilerts, H. W. Eilerts, I. N. Berman and Leonard Seigel, Plaintiffs in Error,

v.

L. M. **HULLUM**, Defendant in Error.

No. 41108.

Supreme Court of Oklahoma.

Nov. 7, 1967.

Hudson, Hudson, Wheaton, Kyle & Brett, by O. C. Essman, Tulsa, for Edward Earl Cline, Jr., Earline Cline Eilerts and H. W. Eilerts, plaintiffs in error.

Jerald M. Schuman, Tulsa, for I. N. Berman and Leonard Seigel, intervenors.

Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for defendant in error.

BERRY, Justice.

Plaintiffs in error, hereafter referred to by name or collectively as defendants, have

appealed from a judgment recovered by plaintiff in an action brought to enforce specific performance of a contract for purchase and sale of real property.

Plaintiff's action was based upon a written contract, executed by defendants on March 8, 1963, under which defendants agreed to convey a described tract (approximately 31 acres) for consideration of $3,000.00 per acre under other conditions not important here. The petition alleged plaintiff's performance of conditions precedent, tender of full performance upon his own part, and that he had been ready, able and willing to perform at all times after April 8, 1963, but defendants had failed and refused to convey as contracted. Upon learning defendants were attempting to avoid the contract plaintiff demanded conveyance from defendants and their agents, but defendants refused to comply. Plaintiffs asked that defendants be required to execute a Warranty Deed to the property involved.

Defendants answered admitting execution of the contract, and that plaintiff had performed conditions precedent prior to April 8th, but denied plaintiff had tendered the balance due under the contract after that date. Further, after agreement had been made for closing the transaction on May 4th the plaintiff refused to appear and deferred the closing date until May 9th. On the latter date plaintiff refused to appear and close the sale at that time, or at any time thereafter. By reason of such failure, on May 15th defendants advised plaintiff by telegram the transaction had to be closed by Noon on May 20th, or the contract would be considered as breached and treated as null and void. Plaintiff then advised he could not close before May 23rd. Defendants also plead that as of May 4th they had performed all required conditions except for minor changes in the note and mortgage plaintiff would have been required to execute. Under the agreement, and by reason of plaintiff's failure to complete the transaction on May 20th, the contract was voided and plaintiff advised same was at an end and the earnest money should be given to defendants in accordance with the contract.

By leave of court other parties (Berman and Seigel) were permitted to intervene, alleging they held an equitable interest in the property, under a contract for sale and purchase executed by defendants on May 24, 1963. Intervenors alleged performance of the conditions precedent, and that they had been ready, able and willing to perform under the contract since June 10th, and reiterated demand on defendants for performance, since their contract had been executed upon advise that the prior agreement with plaintiff had been terminated and canceled. The intervenors sought judgment requiring defendants to execute proper conveyance under their contract.

The judgment having been rendered upon conflicting evidence in a case of equitable cognizance, this Court is required to consider the entire record and weigh the evidence. Having examined the record carefully no need arises for extended narration, hence only those evidentiary matters bearing upon the transaction, and which serve to support the trial court's judgment, as not being clearly against the weight of the evidence, are summarized hereafter.

D. Smith was a real estate broker employed by Whitney Company. M. Smith was employed in the company's office as a "closer." Plaintiff was a builder interested in purchasing certain properties. One such property was a tract (approximately 31 acres) owned by defendants Eilerts, residents of Louisiana, and their relative Cline. An attorney, Mrs. Gwyneth Davidson, had represented defendants in the probate proceeding under which they took title by inheritance.

The broker (D. Smith) knew plaintiff was interested in this land. Not having a listing on the property he made several efforts to reach defendant Cline, who finally advised the broker any matters concerning this property would be handled

through Mrs. Davidson. Sometime in February, 1963, the broker submitted Davidson a contract for purchase of the west half of the tract. This offer was not transmitted to defendants since they intended to sell only the entire tract. Davidson advised the broker as to conditions under which defendants would sell, authorized the broker to effectuate a sale, and assisted in preparation of the wording of the contract.

The proposed contract was sent to plaintiff, whose attorney examined the instrument before executed by plaintiff on March 7, 1963. During this period, and also the subsequent negotiations, it was difficult to get in touch with Davidson, because of her frequent absences from the city due to family illness. Upon return of the proposed contract to Davidson she procured defendants' signatures and the instrument was placed in M. Smith's hands for closing after all conditions precedent were satisfied. At this point in the transaction a question arose between Davidson and M. Smith concerning who was required to prepare the note and mortgage plaintiff would have to execute. The abstract was delivered to D. Smith, and then taken to an abstract company to be brought down to date. Upon completion on March 15th, the abstract was returned to Whitney Company and then was picked up by plaintiff and delivered to an attorney for examination. A title opinion rendered April 8th, required a survey reflecting record easements, dedications and grants, and also a certificate of non-development from the state as to an oil and gas lease.

On April 19th the Eilerts called M. Smith at Whitney Company for a closing date, and were advised everything was in order except for the closing papers. Defendants later called again and were advised plaintiff would be available on May 4th. Prior to that date and at Davidson's request an attorney for Whitney Company had prepared a note and mortgage. Some controversy developed because defendants declined to bear this part of the closing expense, and the matter was resolved by equal division of the charges. Upon delivery of these instruments to plaintiff's attorney attention was called to a variance between the property description and the description in the title opinion.

On May 4th defendants came to Whitney Company to check the note and mortgage, and a deed previously prepared in compliance with Davidson's written notes relative to required changes. By prior agreement, the deed named plaintiff and his parents as grantees. Davidson talked by telephone with plaintiff, who agreed to suggested changes in the instruments if approved by his attorney. Plaintiff declined to close the transaction that date because his parents could not be present to execute the note and mortgage. However, plaintiff consented to get in touch with Davidson on May 6th to agree upon suggested changes in the closing papers. Not having heard from plaintiff, Mrs. Davidson took her written notes concerning the suggested changes to Whitney Company, where the papers were re-typed. Between May 6-15 efforts were made to get Davidson and plaintiff's attorney together to agree upon the final papers, but there was difficulty in reaching Davidson. The transaction had not been closed on May 14th and upon inquiry Davidson was advised continued absence of plaintiff's father from the state prevented closing. There was no settled agreement as to which side would prepare the final, revised papers.

On May 15th defendants Eilerts addressed a telegram to Whitney Company, advising delay in closing beyond Noon on May 20th would declare the contract breached. The telegram was not delivered to plaintiff, but was telephoned to his home, and the evidence whether he received it on Wednesday or on Friday, May 17th was conflicting. The evidence did show plaintiff took the matter up with his attorney on Friday and requested three days extension from defendants who refused this request.

Testimony elicited from the realtor who handled the negotiations culminating in ex-

ecution of the contract for intervenors' purchase of this property, disclosed the matter was discussed with Davidson on May 14th. This realtor was advised to call Davidson after May 20th as she would know then whether her friends had property for sale. The witness knew plaintiff had signed a contract to purchase this property. On the night of May 20th Davidson advised the witness she had the property for sale and he could initiate efforts toward selling the land.

The trial court found that time was not intended to be of the essence of the plaintiff's contract, neither by terms of the agreement nor conduct of the parties; defendants acted arbitrarily from beginning of the transaction; all the parties acceded to delays without objection; the principal delay resulted from disagreement regarding which of the parties would draft the note and mortgage, and the court considered defendants' attempt to require someone else to draw these instruments a special circumstance. For these reasons, and other matters in the record, the trial court entered judgment in plaintiff's favor decreeing specific performance of the contract.

The principal contention advanced as grounds for reversal states:

"Although time was not originally of the essence, a party to the contract may by notice bind the other party who is in default, to perform his part of the contract within a reasonable time specified in such notice; and if the party receiving such notice does not perform within the time so specified, his right to specific performance is lost."

■ The contention is a statement of the text rule expressed in 81 C.J.S. Specific Performance § 106d. The basis of the argument urged is that defendants were ready to close the transaction as early as April 19, 1963, but the failure to close the transaction resulted from plaintiff's reckless and inexcusable indifference. This conclusion necessarily rests upon the defendants' interpretation of the weight and credibility of the testimony. The trial court's finding

that delays were occasioned by the parties, but that the parties acceded to these delays is clearly supported by the evidence. The argument relative to such findings being against the clear weight of the evidence is untenable.

[3–5] The general rules in regard to delay in transactions wherein time is not of the essence are stated in 81 C.J.S. Specific Performance § 110. Where time is not of the essence an unreasonable, inexcusable, or unjustified delay in performance must be shown to support denial of relief. Mere lapse of time does not necessarily constitute grounds for barring relief. Harrell v. Clarke, 174 Okl. 623, 51 P.2d 720. And, delay in performance may be excused when caused by the defendant, or where defendant has acquiesced in the delay. Powell v. Moore, 204 Okl. 505, 231 P.2d 695. As to acquiescence in delay see Whale v. Pearson, 201 Okl. 619, 208 P.2d 552.

In their reply brief defendants urge that time became of the essence of this contract when plaintiff, then in default, was notified to perform, and failure to perform within the time prescribed destroyed plaintiff's right to specific performance. This argument is predicated upon the assumption plaintiff was in default on May 15th, the date of the notice. Upon this assumption defendants assert that the only issue is whether the time granted for performance was a reasonable time under the circumstances.

■■ Our decisions recognize that although time is not made the essence of a contract it may become of the essence by giving proper notice to the party in default to perform within a reasonable time. Whale v. Pearson, supra; Owens v. El Gato Inv. Co., Okl., 332 P.2d 22. No exact rules can be stated as to what constitutes a reasonable time. In Britton v. Absher, Okl., 290 P.2d 769, general principles applicable to consideration of the question are stated, and it is recognized that each case depends upon its own merits. We resolve the present issue under these principles.

Although questionable whether the attempted telegraphic notice was communicated to plaintiff expeditiously enough to establish that the specified five days had been made the essence of the contract, we are of the opinion and hold that the expressed time was not a reasonable notice. The purported five day notice ran through Saturday and Sunday and expired at Noon the following Monday. If actually received by plaintiff, the maximum accountable time would have amounted to less than four business days, since the weekend was included within the time allowed. It is unnecessary either to construe statutory provisions [12 O.S.1961 § 73, 25 O.S.1961 § 23] relating to computation of time, or to consider the effect of the use of language in the notice purportedly extending time for performance for a fractional portion of a day. See 52 Am.Jur., Time § 15. A maxim of English law is that how long a "reasonable time" should be should not be defined in law, but should be "left to the discretion of the judges." Co.Litt. 50; Twin Lick Oil Co. v. Marbury, 91 U.S. 587, 591, 23 L.Ed. 328. The attempted telegraphic notice did not provide a reasonable time to perform. The failure to close the transaction within the period purportedly extended did not destroy plaintiff's right to seek specific performance of the contract.

Other matters are presented in support of defendants' position. The matters stated resolve the decisive issue, so that we do not consider these arguments separately. The trial court found the delay in closing the transaction involved both sides, and was acquiesced in by all concerned. This finding encompassed consideration of the activities of the attorney whom defendants clothes with apparent authority to initiate and participate in negotiations for sale of the property. The contract under which specific performance was sought was drafted in accordance with her instructions and requirements. Under these circumstances the claim that Whitney Company acted only as the buyer's agent so that plaintiff was bound by notice to the company is without merit. The delay in the transaction did not change the situation of the parties or the property, either as to their respective rights or value of the property. Our consideration of the record and the briefs in this case impels us to the conclusion that the finding of the trial court, and judgment in favor of the plaintiff, was not clearly against the weight of the evidence.

Judgment affirmed.

All Justices concur.