## STARKWEATHER v. JENNER.

PURCHASE BY TRUSTEE; INADEQUACY OF PRICE; FIDUCIARY RELATION; CONTRACT TO BID AT AUCTION.

1. Mere inadequacy of price at a trustee sale is not of itself sufficient ground for vacating the sale, unless the inadequacy is so gross as to shock the mind.

2. Each member of a syndicate owning real estate occupies a fiduciary re-

lation toward his fellow members, and his dealings with the subject-matter are viewed with jealousy, and may be set aside for slight grounds.

3. A trustee may purchase the trust property at a judicial sale brought about by a third person, which he has taken no part in procuring, and over which he has no control.

4. A contract between two or more persons, whereby it is stipulated that one is to be the purchaser for the joint benefit of himself and the others, is not void as against public policy, unless such arrangement is made for the purpose of preventing fair competition and depressing the price below the fair market value.

5. Where property owned by a syndicate is sold at a trustee's sale to satisfy an encumbrance, part of the members of the syndicate may combine to purchase such property, if the sale is not brought about by them, is not under their control, is for a fair price, and if there is no fraud or unfair dealing.

6. A suit by a member of a land-owning syndicate to set aside the purchase of the land by several of his fellow members at a sale by trustees, under a deed of trust, is brought too late, where five years have elapsed since the sale, and the land has meanwhile steadily increased in value.

No. 1538. Submitted January 17, 1906. Decided April 4, 1906.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill to set aside a sale under a deed of trust.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in equity dismissing the bill filed by George B. Starkweather, the appellant, praying the supreme court of this District to set aside a sale of land made by Cole and Duvall, trustees, under deed of trust, to Herbert W. T. Jenner, the appellee, or, in the alternative, to decree that Jenner hold title to the property he purchased for the benefit of the appellant and other persons, members of the syndicate which before such sale owned the land. The land sold contained 7 acres, and was a part of 10 acres owned by such syndicate, the land lying in Washington, between Fourteenth and Sixteenth streets extended, and known as the "Crescent Heights" syndicate purchase. Under the syndicate agreement

this land was vested in Croissant and Johnson, trustees, appellees herein.

The amended bill was filed April 1, 1903, the original bill probably a short time prior to that date. The record omits all reference to the original bill.

It appears that the appellant was the owner of the two parcels of land comprising 10 acres, and that early in 1892 he conveyed both parcels to the appellees Croissant and Johnson as trustees for the shareholders in the syndicate who had united to purchase the property for $75,000. There were to be thirty shares each of the value of $2,500. The encumbrances upon the property were several deeds of trust aggregating $39,000, and among these encumbrances was a deed of trust to Gaither to secure $7,553.34, executed January 29, 1889, wherein Cole and Duvall were trustees, payable four years after date, with interest. This lien was upon the 7-acre parcel.

The appellant conveyed the said two parcels to Croissant and Johnson, trustees, on May 2, 1892. Finally Gaither directed Cole and Duvall, trustees, to sell the 7-acre property covered by his deed of trust. The trustees advertised the property for sale in November, 1897, and on the day of sale the property was knocked down to Ricker, who paid the $1,000 deposit money, but did not further comply with the terms of sale.

Ricker purchased for the appellant. Cole and Duvall, trustees, upon payment of $300 each time by appellant, twice postponed the time of consummating the sale. Neither Ricker nor Starkweather, the real purchaser, who was also a large shareholder in this syndicate, complied with the terms of sale. The trustees readvertised the property. Thereupon Ricker filed a bill in equity in the court below to restrain such sale. This bill was finally dismissed on February 3, 1898, and, after due publication, Cole and Duvall, trustees, again offered the property for sale. On the day of sale, Starkweather, by his agent, Silver, and Jenner, the appellee, a shareholder in the syndicate, and others were bidders. The property was knocked down to Silver, and Starkweather met the requirement for a deposit of $1,000 by offering certificates of stock in the Forest Lake Cemetery Company; this security the trustees, Cole and Duvall,

declined to accept, and immediately re-offered the property, and at this sale a few minutes afterward, Jenner, the appellee, became the purchaser of the 7-acre parcel for $17,100. Jenner, having complied with the terms of sale, the property was conveyed to him by Cole and Duvall, trustees, on February 2, 1898. The auditor's report distributing the money was confirmed and the trustees disbursed the money accordingly.

The appellant, in his amended bill, charged that Croissant and Johnson, trustees, and Jenner, a shareholder in the syndicate, who had associated several other syndicate members with him, conspired, first, by declining to pay the interest due to Gaither to hasten the public sale of the property; and, secondly, by Jenner and his three associates combining and agreeing not to bid against each other for the property, and, for their own benefit, to bid in the property for as small a sum as possible, and not exceeding $24,000. It appears that all of the thirty syndicate shares except six were sold. The appellant received eleven shares in addition to $11,000 in cash and the payment of certain judgments against him by the trustees, and he still holds four of these shares. Six of these shares remained in the possession of Croissant and Johnson, trustees, to be sold for the payment of the encumbrances and expenses, and it is charged that said trustees, in collusion with the appellee and to secure him an unlawful advantage in the purchase of said property, invited and assisted the sale under the Gaither deed of trust, although it was their duty and within their power as trustees to pay the interest thereon, and to assess the shareholders *pro rata* to meet such interest and other expenses of holding the syndicate property. In lieu thereof the appellee and others paid the interest due on said deed of trust up to the year 1898, when, these persons refusing longer to pay the interest, upon default the property was advertised and sold.

The appellee admits the power of Croissant and Johnson to assess the shareholders, but alleges that the shares became unmarketable, and the persons who had advanced the interest became unwilling to advance more because of a suit in equity brought by the appellant, and by reason of misstatements of the appellant whereby the shares became unmarketable and the

trustees of the syndicate could not negotiate any of them to pay either encumbrances or interest thereon.

The appellee avers that he purchased the property for himself and certain other shareholders who were willing to join him and contribute the purchase money, and that he and they so acted in order to save, if possible, the money he had already advanced; and he did not refuse an interest in the purchase to any shareholders willing and able to pay for the same. The appellee denies all collusion and fraud. Cole and Duvall, trustees, assert that the sale was fair, and that they had no knowledge of any combination on the part of the appellee and others to improperly acquire the property, and do not believe such combination existed. Croissant and Johnson, trustees, say they were unable to pay the Gaither deed of trust at maturity and unable to sell any of the six shares remaining in their hands, and that the deed of trust gave them no power and imposed no duty on them to pay off lien debts by making an assessment upon shareholders, and that they could not make any assessment whatever upon shareholders unless requested to do so by at least a majority of such shareholders; and finally, that it was impossible to raise any money whatever on assets of the syndicate in order to pay off the Gaither lien and thereby prevent the sale. Croissant and Johnson, trustees, say that for some time they met the payment of interest by making loans personally, or by obtaining loans as trustees from a bank. They deny all collusion with the appellee or anybody in relation to the purchase of the 7-acre tract by the appellee.

*Mr. Richard P. Evans, Mr. A. W. Thomas, Mr. James E. Padgett,* and *Mr. Edwin Forrest* for the appellant.

*Mr. B. F. Leighton* for the appellee Jenner.

*Mr. R. Golden Donaldson* for the other appellees.

Mr. Justice McComas delivered the opinion of the Court:

There are twelve assignments of error, some of which we

need not consider because the matters therein are included in the others which we deem material.

1st. Under the fourth assignment of error the appellant contends that the relationship of the shareholders in the "Crescent Heights" syndicate land, whether they be partners, or tenants in common, or *cestuis que trustent,* or hold other joint relationship, was actually such as created among themselves a fiduciary relationship, a community of interest, which made it unlawful and inequitable for the appellee and the three shareholders associated with him to combine to bid in the syndicate property for as small a sum as possible at the auction sale under the Gaither deed of trust for their personal benefit; and that they thereby sought to, and did, extinguish the rights and interests of the complainant and all other of the shareholders in the 7 acres sold by Cole and Duvall, trustees.

The appellant mainly relies upon the following writing, signed by Jenner, the appellee, and Campbell, Spear, and Parker, three other shareholders:

We, the undersigned, hereby appoint Herbert W. T. Jenner, trustee, of Washington, D. C., our attorney in fact, to bid for us at an auction resale of about 7 acres of land near Washington, D. C., to take place on December 16, 1897, under a deed of trust or any other postponement of said resale, or subsequent resale, to bid in the property for as small a sum as possible, the outside limit to be twenty-four thousand dollars ($24,000).

And we hereby agree to pay Mr. Jenner our proportionate shares of the total cost and tax deeds on said property already obtained by him, and we agree to pay our proportionate shares of the deposit money on the day of sale, and the balance of the purchase money within the period and on the terms set forth in the advertisement under which the sale is made, our said proportionate interests or shares to be as stated below under our respective signatures.

The appellant insists that by this secret agreement, and other means, appellee gained an unlawful and inequitable advantage over him in the purchase of the land, and that such purchase should be set aside, or, in the alternative, should be held a constructive trust inuring to the benefit of .the appellant and

the other shareholders in the "Crescent Heights" syndicate land. It should be observed that the appellant, at each time Cole and Duval, trustees, offered this parcel for sale, had sought to buy the land for his own benefit by the intervention of his own agent, and when it was finally sold had in the same manner bid, and the property was knocked down to his agent, but the trustees declined to accept the security offered by the appellant in lieu of the required deposit money. It is true the appellant testifies that he all the while intended to give all the shareholders the benefit of his purchase if he secured the property at either of these offerings of the same at public sale; but it is also true he carefully concealed from all the other shareholders his unselfish intent. While the appellant protests that he was aware that a court of equity would compel him to treat his associate shareholders equitably, he also says that he had consulted with his attorney, and he had secretly bid for the 7-acre tract under the inspiration and advice he had received from his attorney, who had told him: "Your way to do is to bid that in through a third party that you can trust; then you will hold the whip hand over them and not be dictated to as you have been heretofore." He concealed from every shareholder the fact that he was bidding for the property; he did not bid in person. At the first sale he procured Ricker to buy the property in Ricker's name for the appellant's benefit. Ricker sought in the equity court to prevent a resale by Cole and Duvall, trustees. The appellant denies that he authorized his agent, Ricker, to institute such suit. It is manifest, however, that Ricker had no motive nor interest in so doing, and that the appellant had. At the second sale the appellant bid for the property through another agent, and in his name bought the property on February 3d, 1898, for about $24,000, and failed to furnish the deposit money required, and immediately thereafter the auctioneer reoffered the property and sold it to the appellee, the highest bidder, for $17,100.

We observe the appellant waited about five years after the sale of which he now complains, and then filed the bill in equity we are here considering, asking that the sale to the appellee be set aside; or, since that is impossible, that the court decree that

the appellee Jenner hold the title to the property he purchased five years before in trust for all the shareholders in the "Crescent Heights" syndicate in proportion to their respective holdings, and that the appellee make an accounting with such shareholders.

The witness Gordon estimates the 7 acres were worth about $24,000 at the time of the sale, and about $40,000 at the time the appellant filed this bill in equity. He testified that prior to the sale there was a great stagnation in real estate in this section, and that at the time of the sale the 7-acre parcel was worth from $3,000 to $4,000 per acre, but that about the time the appellant brought this suit the witness would have given from $5,000 to $6,000 an acre for this parcel. We will later advert to the long delay of the appellant in bringing this suit, and the circumstance that he waited until this land purchased by the appellee had greatly advanced in value.

Under the fifth, sixth, seventh, and eighth assignments of error, the appellant further contends that the evidence shows that the sale of the land made to Jenner, the appellee, was collusive and unlawful, because the circumstances attending the making of the agreement between Jenner and the three shareholders associated with him shows that the agreement was designed to defraud the appellant and the other shareholders.

The appellant testifies he first learned of the existence of this agreement when Campbell, one of the signers, filed a bill in equity against Jenner, the appellee.

It appears that the amended bill in the suit referred to was filed December 21, 1898, and it seems that the appellant speedily gained knowledge of this effort of Campbell to make Jenner account respecting the purchase of the 7-acre tract. Jenner's testimony shows that he acted for the three persons and himself, who joined in the agreement to purchase. It does not appear that he extended like opportunity to other shareholders to associate with him either before or after he became purchaser of the land. That the sale of Cole and Duvall, trustees, was in every respect fair is undisputed.

The effort of the appellant to show that there was no necessity for the sale of the land fails. The debt secured by the Gaither

lien was due in January, 1893, and in October, 1897, Gaither, the holder of the note, in writing, instructed Cole and Duvall, trustees, to advertise and sell the tract because of default in the payment of interest due in July of that year.   There is some evidence that Gaither did not insist upon the payment of the long overdue debt, and that he several times was indulgent, at the appellant's instance, in giving delay in the payment of the interest.   When none of the parties concerned procured payment of interest, Gaither directed the sale to proceed, and later, at the instance of appellant, delayed the sale.   It is clear that the appellee had several times advanced money to pay interest to prevent the sale of the land of the syndicate.   Croissant and Johnson, trustees, were either unable or neglectful in the payment of interest upon the encumbrances; but there is no evidence to connect the appellee and his associates therewith, and there is much in the record to disprove collusion between these trustees and Jenner.   It appears in the record that when an effort was made to assess the shareholders the appellant sought the aid of the court to restrain the assessment, and did thus restrain a certain assessment, though this proceeding was subsequent to the sale of the land to the appellee.

We have carefully examined the circumstance attending the auction sale whereat the appellee purchased this land, and we are convinced that in every respect the sale was fair and that the appellant's case utterly fails to show collusion.   That the appellant was a bidder there was not disclosed.   Jenner bid openly in his own name.   Wright, representing Mrs. Hubbard, who held the second trust, was an open bidder for his client, and other persons bid upon the property.   It is true that the appellant's bid of $24,100 considerably exceeded the final sale to Jenner at $17,100, and it is also true that Jenner's associates had empowered him to bid $24,000, and that, under their agreement to buy the property as cheaply as possible, he was the highest bidder and became the purchaser when the property was immediately thereafter reoffered at the lower price named. The appellant attributes fraud to the agreement of Jenner and his associates to buy the property at the lowest possible price. It could scarcely be expected they would agree to buy it at the

highest possible price; such an agreement would have been absurd. The question here is whether there was such community of interest or fiduciary relation on the part of the appellee and his associates with their fellow shareholders as forbade them to bid at all. If we conclude they could properly bid upon the land, it was natural they should bid at the public bidding for the lowest bid for which the property could be obtained.

Had the price been grossly inadequate, the court below should have set the sale aside, not because these persons had not bid more, but because the price accepted by the trustees was deemed grossly inadequate. The court below ratified this sale in an appropriate proceeding in equity, and we are not convinced that the price was so inadequate that the court should have set it aside.

The appellant, by his ninth assignment of error, insists that the price was so inadequate as to suggest fraud. Mere inadequacy of price at a trustee sale is not of itself sufficient ground for vacating the sale. The inadequacy in this instance is not so gross as to shock the mind. While inadequacy of price is an auxiliary argument, allied with circumstances calculated to cast suspicion on the sale, it cannot have that effect in this instance where the proof affirmatively shows the sale to have been absolutely fair, wherein the trustees, Cole and Duvall, acted with great propriety and good judgment, wherein every effort to show collusion or improper conduct on the part of Croissant and Johnson, trustees, or of Jenner and his associates, has absolutely failed.

In our opinion, the appellant's attempt to reverse the learned court below rests upon two circumstances: The first, that the appellant bid up this property to $24,100, and failed to deposit the cash required by the terms of the sale, and that thereupon the property was reoffered and was purchased by the appellee, the unquestioned highest bidder, for $17,100; and secondly, that the appellee had entered into the agreement to purchase which we have before recited. In our opinion, there is no evidence in this record to prove fraud, actual or constructive. There is a failure to show collusion between the defendants or

any of them. We do not extend this opinion by a review of four or five trivial circumstances, most of which were innocent, the rest of which are unimportant. Several transactions relating to the 3-acre tract, and most of them occurring after the sale to the appellant of the 7-acre tract of land, we deem so unimportant that we need not discuss them here.

The appellant's bill is plentiful in accusation, and his testimony in his own behalf abounds in suggestion of improper conduct, and the argument of counsel and their brief is plentifully supplied with expressions of understandings and the tacit consent of trustees, Croissant and Johnson, in behalf of Jenner and Spear, two of the purchasers; but the testimony falls far short.

To sum up the matters in the record, this is a case in which a number of persons, in a highly speculative period, bought lands from the appellant which he obtained at a small price, and which the shareholders took at a very high price. A long period of depression in real-estate prices followed, during which the trustees of the syndicate could not sell the shares undisposed of at any reasonable price, and the appellee and others interested advanced interest money to delay sales by lien holders, and the appellant also endeavored to stay such sales. When, under Gaither's lien, the 7 acres were offered at public sale, the appellant was on hand, a secret bidder, to buy on the occasion. The appellee was usually there or thereabout watching the sale, and on the last occasion he openly purchased the property in his own name, and it thereafter appeared he had purchased in behalf of himself and three other shareholders.

We deem it unnecessary to review the authorities upon which the appellant here relies. We think the Supreme Court, in several cases quite similar to the case we are here discussing, have clearly stated the principles which lead us to affirm the judgment of the learned court below.

The proof in the record satisfies us that the appellee and his associates were unwilling to stand by and see their very considerable investment in the "Crescent Heights" syndicate lands swept away by a sale under a lien existing prior to the purchase of the land by the syndicate, and therefore agreed to buy the

property in the hope that they would thus save the money they had invested. It also appears that Starkweather endeavored to do the same thing in the same way, and with a like intent and motive. The appellee, having a private agreement with his associates, bid openly in his own name. The appellant secured another person to bid, as we have said.

As the Supreme Court said in *Twin-Lick Oil Co.* v. *Marbury:* "In short, there was neither actual fraud nor oppression. No advantage was taken of defendant's position as director, or of any matter known to him at the time of the sale affecting the value of the property, which was not as well known to others interested as it was to himself; and that the sale and purchase was the only mode left to defendant to make his money." 91 U. S. 587, 588, 23 L. ed. 328, 330.

That the appellee occupies one of those fiduciary relations where his dealing with the subject-matter and with the parties having community of interests is viewed with jealousy by the courts and may be set aside on slight grounds, is a doctrine founded on the soundest morality and often recognized by the Supreme Court. *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 589, 23 L. ed. 330; *Koehler* v. *Black River Falls Iron Co.* 2 Black, 715, 17 L. ed. 339; *Drury* v. *Cross* (*Drury* v. *Milwaukee & S. R. Co.*) 7 Wall. 299, 19 L. ed. 40.

"Defendant was at liberty to bid, subject to those rules of fairness which we have already conceded to belong to his peculiar position; for, if he could not bid, he would have been deprived of the only means which his contract gave him of making his debt out of the security on which he had loaned his money. We think the sale was a fair one. The company was hopelessly involved." *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 590, 591, 23 L. ed. 330, 331.

We have said that in this case we are convinced there was no fraud or unfair dealing on the part of the appellee and his associates in making the purchase, nor was there such gross inadequacy of price as would make the appellee's bid suggestive of fraud. Therefore, the case of the appellant here must rest on the fiduciary relation of the defendant, and in a case of that class, where this was the whole extent of the claim, not that the

purchase shall be set aside and declared void for fraud of any kind, either express or implied, but that it should be upheld and made to operate as a resulting trust for the benefit of the complainant. The court was speaking of a case in which an executor with absolute control over real estate and with power to sell any part thereof to discharge debts, and finally to sell all and distribute among devisees, himself bought the interest in the land of one of the devisees when sold under a judgment against such devisee, and the court said: "There is nothing in the transaction, from its inception to its final consummation, that imposed upon the defendant any duty incompatible with his right as a purchaser at the sale. The principle that a trustee may purchase the trust property at a judicial sale brought about by a third party, which he had taken no part in procuring, and over which he could not have had control, is upheld by numerous decisions of this court and of other courts of this country. *Prevost* v. *Gratz,* Pet. C. C. 364, 378, Fed. Cas. No. 11,406; *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 23 L. ed. 328; *Chorpenning's Appeal,* 32 Pa. 315, 72 Am. Dec. 789; *Fisk* v. *Sarber,* 6 Watts & S. 18. It is true that the rule upon this subject as stated by some text writers is more stringent than that stated in these cases. 1 Perry, Tr. § 205, Hill, Trustees, 250. We think, however, that the language employed by them does not present a thorough and perfect generalization of the essential principles pervading the decisions upon this subject." *Allen* v. *Gillette,* 127 U. S. 589, 596, 32 L. ed. 271, 274, 8 Sup. Ct. Rep. 1331.

From an examination of the adjudicated cases, we are of opinion that every contract between two or more individuals, whereby it is stipulated that one is to be the purchaser for the joint benefit of himself and others, is not to be held void as against public policy. It sometimes happens that, unless two or more persons thus unite, and are thereby enabled to become purchasers, neither of them could have otherwise participated in the bid; and thus it may happen that the interests of the vendor are directly advanced by such an agreement. Upon all the testimony in this case, we are not convinced that this combination was designed to induce a sale at an inadequate price, but the

plain design was that these associates wished to become pur-chasers at a price and fixed a limit as their maximum of the fair value of the property. When, however, such arrangement is made for the purpose and with a view of preventing fair competition, and, by reason of want of bidders, to depress the price below the fair market value, the agreement and combi-nation will be illegal. Fraud is not to be presumed where the contract is consistent with honesty of purpose and fair dealing.

Since the Supreme Court has declared that the doctrine of fiduciary relations here considered falls far short "of holding that no such contract can be made which will be valid," we con-clude that this sale was not invalid; but whether liable to be avoided afterwards by other shareholders, upon the ground of fiduciary relations of the appellee to such shareholders, we need not discuss, although we think the facts in this case do not bring it within that rule. As was said by the court in *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 591, 23 L. ed. 330, the appellant "comes too late with the offer to avoid the sale;" and the court held in that case that upon principle and authority, and because of delay of nearly four years after the sale, the plaintiff had delayed too long in bringing his suit. In the case before us, where the appellee bought this real estate in times of depres-sion, and during the subsequent five years the land he bought had steadily increased in value, this appellant delayed five years before bringing this suit.

If we had serious hesitation in affirming the decree of the court below, this long delay on the part of the appellant should resolve all remaining doubts and determine us to sustain that decree.

The decree must be affirmed, with costs, and it is so ordered.

*Affirmed.*

An appeal to the Supreme Court of the United States was prayed by the appellant, and allowed May 1, 1906.