## Richards, Appellant, *v.* Richards.

*Tenants in common—Relations with each other—Adverse title.*

The rule is firmly established that where one has a joint interest in an estate with another an obligation arises to uphold the joint interest. The law does not permit one to acquire an adverse title and set it up against his cotenant. The presumption is that each joint owner acts for all where a common interest is involved. The relationship of the parties forbids that one act in antagonism to another with reference to such interest.

A tenant in common cannot acquire through a sheriff's sale for taxes or a municipal lien, a title adverse to his cotenants. If title is acquired by a cotenant at such a sale, the amount which he has advanced for the preservation of the property is chargeable against it, and such charge may be enforced in an equitable proceeding.

Where one of several tenants in common purchases the property at a tax sale, the interest of another tenant in common in the property cannot be defeated by the mere fact that he acquiesced in a plan by which his own children through another person were to purchase the property, which plan was in fact never carried out.

Argued April 24, 1906. ·Appeal, No. 148, April T., 1906, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T., 1903, No. 63, on verdict for defendant in case of William J. Richards v. Charles M. Richards, Ada E. Wills and the Pennsylvania Title & Trust Company, Trustee. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and BEAVER, JJ. Reversed.

Ejectment for an undivided one-seventh interest in real estate in the sixth ward of the city of Allegheny. Before BROWN, J.

510      RICHARDS, Appellant, *v*. RICHARDS.

Statement of Facts—Charge of Court below.   [31 Pa. Superior Ct.

At the trial it appeared that Martin Richards died in 1892, leaving a will wherein he devised all of his property to his wife for life.   He then provided as follows :

"I give and bequeath to Ada E. Wills, William J. Richards, Charles M. Richards, Jane Harker, Mary W. Wright, Theodore A. Armstrong and Charles M. Wagner, each share and share alike, at the time of sale or division of my effects, real or personal."

The widow neglected to pay the taxes, and tax liens were entered against the property.   At a tax sale the property was knocked down to Ada E. Wills.   She, however, failed to pay the purchase money, and the property was again sold on an alias levari facias to Charles M. Richards and Ada E. Wills. The purchase price was $1,320.   Fifteen hundred dollars was borrowed upon the property, and the purchase money was paid out of the proceeds.   It appeared that P. T. Trimble, Esq., a member of the bar, attempted to make some arrangement to purchase the property on behalf of the daughters of William J. Richards, the plaintiff.   This plan was acquiesced in by the plaintiff, but the plan was not carried out.   Neither Mr. Trimble nor the plaintiff interfered in any way at the second sale.

The court charged in part as follows :

[You have, then, not only the fact, if you so find, that he refused to join in the sale, but if you find from the clear force of the testimony—that is, by testimony clear, precise and indubitable—that he not only refused to join in this joint effort to save the property, but did something more than that— attempted adversely to get the property in the name of the children, which would have taken the property entirely from the other parties—if that were his sole effort in refusing to join the other people to save it, and his effort was to divert it into the possession of his children, so that they would get the full, round benefit of the whole property, and thereby, as a matter of law, depriving the other people of any possible interest, or any chance of getting any interest in the property; if you find that was his purpose and effort, if the testimony satisfies you it was that, then there ought to be a verdict for the defendant.

If the plaintiff, by a line of conduct which did not bear the

impress of good faith, but showed a disposition upon his part not to act in good faith, for the common benefit or joint benefit of the other heirs, who were ·jointly interested, but adverse to them attempted to wreck that situation, to strike it down, to carry the property away and put it in his children, by conduct of that sort, he is estopped from coming in at this point and attempting to get from the other people what they had a right to get under the circumstances, because they had the right to save it. If he had agreed to join them in buying that, and helping them, clearly, then, he would be entitled to a verdict; but if his conduct was just the reverse of that, not attempting to save it for the joint benefit, but attempting to wreck it and take it away from that joint interest, and pass it down to his children, so that they would have it, and all the other interests would be stricken down, then it was a line of conduct that is not considered fair and right in law, and would bar him from a recovery in this case.] [8]

[As we have said to you, if his line of conduct does not bear the impress of good faith, fairness to his cotenants; if his whole effort was not in that common direction, to help the joint purpose of the cotenants, but to strike down that interest, to carry the property away and put it in his children, and get it out of the way in that sense, then there ought to be a straight verdict for the defendant.] [9]

Mr. Wright: You have stated Mr. Trimble said he was representing the plaintiff. He stated that he represented the children.

The Court: In connection with Mr. Trimble's testimony as to whether he was representing solely the children, or representing the children and the plaintiff here, in an effort to put the property in the children's name, Mr. Trimble says, I believe— but it is for you to recollect just what the testimony was, and not take it from the court. It is for you to take what you remember the testimony to be. I think his testimony was—but you will correct it if we are mistaken—that he was consulted in a joint way, not merely by the children. Of course he met one child and then another, but he was consulted by the children, and by the father, the plaintiff in this case. So that, if the common purpose was well known, to direct this property from the line of the joint saving for all, to his own personal

512        RICHARDS, Appellant, v. RICHARDS.

Charge of Court below—Opinion of the Court.   [31 Pa. Superior Ct.

interest in the children, then there ought to be a straight verdict for the defendant.] [10]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (8, 9, 10) above instructions, quoting them.

*G. K. Wright,* for appellant.—One cotenant cannot purchase an outstanding title or an encumbrance affecting the common estate for his own exclusive benefit, and assert such right against the other cotenants : Tanney v. Tanney, 159 Pa. 277 ; Chorpenning's App., 32 Pa. 315 ; Weaver v. Wible, 25 Pa. 270 ; McGranighan v. McGranighan, 185 Pa. 340 ; Gibson v. Winslow, 46 Pa. 380 ; Lloyd v. Lynch, 28 Pa. 419 ; Edmunds's App., 68 Pa. 24 ; Clark v. Lindsey, 9 L. R. A. 740.

*Charles M. Thorp,* with him *A. H. Mercer* and *Leo Weil,* for appellees.—It appearing that the appellant had notice of the sheriff's sale and was requested by appellees to join them in buying the property, and failed and refused to do so, he cannot afterwards set up any title to the common property.

It also appearing that the appellant not only refused to join the appellees in an endeavor to preserve the common property, but that he sought to buy it for himself and in his own interest, by so much the more is he precluded from asserting any title after the sale.

Even if the appellant might have asserted title after the sale, it was for him to elect whether he would do so and bear his share of the burden, or refuse to do so and thereby abandon such interest; and failing to do or say anything for two years after the sale, while the property was being improved and the situation was changing (the life tenant in the meantime having died), it must be presumed that he had abandoned any interest he might have asserted : Edmunds's App., 68 Pa. 24 ; Chorpenning's App., 32 Pa. 315 ; Watson v. Watson, 198 Pa. 234 ; Potter v. Herring, 57 Mo. 184 ; Mandeville v. Solomon, 39 Cal. 125 ; Wright v. Sperry, 21 Wis. 336.

OPINION BY HENDERSON, J., October 5, 1906 :

The rule is firmly established that where one has a joint interest in an estate with another an obligation arises to uphold

the joint interest.   The law does not permit one to acquire an
adverse title and set it up against his cotenant.   The presump-
tion is that each joint owner acts for all where a common in-
terest is involved.   The relationship of the parties forbids that
one act in antagonism to another with reference to such inter-
est.   This rule was said, in Chorpenning's Appeal, 32 Pa. 315,
to be " inflexible, without regard to the consideration paid or
the honesty of the intent."   Nor is the situation different if
the adverse title be acquired through a sheriff's sale for taxes
or a municipal lien.   In such a case default is made by all of
the owners, and the obligation rests upon all of them to relieve
the property.   Under such circumstances the interests remain
and the possession is constructively in all as tenants in common,
notwithstanding the legal title in the purchaser.   A joint ten-
ant upon whom is cast the burden of protecting the common
property because of the unwillingness or inability of his co-
tenants to contribute is not without means of reimbursement
for the outlay incurred.   The amount necessary for the pres-
ervation of the property is chargeable against it and such charge
may be enforced in an equitable proceeding.   Weaver v. Wible,
25 Pa. 270 ; Chorpenning's Appeal, 32 Pa. 315; Gibson v.
Winslow, 46 Pa. 380; Dickey's Appeal, 73 Pa. 218 ; Tanney
et al. v. Tanney, 159 Pa. 277, and Enyard v. Enyard, 190 Pa.
114, are some of the cases in which the rule above stated is
discussed and illustrated.   The appellees contend that their
case is not under the operation of this rule because the plain-
tiff, when called upon to contribute to the discharge of the
municipal claim, refused or neglected so to do; and not only
that, but was a party to an attempt of his daughters to acquire
the title at sheriff's sale adversely to all of the owners.   It
does not appear from the evidence that the plaintiff was con-
sulted by either of the defendants before the sale.   The evi-
dence shows that Mr. Trimble, a member of the bar, at the so-
licitation of his mother tendered his neighborly good offices to
the plaintiff's daughters when the property was about to be sold
by the sheriff, with a view of securing it for them.   The plan
seems to have been in a general way that Mr. Trimble would
bid in the property for the plaintiff's daughters and that they
would earn money with which to discharge the obligation so
incurred.   The plaintiff consented to this arrangement.   Noth-

ing came of it, however, and the property was bid off by Mrs.
Wills, one of the defendants. Because she failed to pay her
bid that sale was set aside and a new writ issued upon which
the property was finally sold. It may well be doubted whether
Mr. Trimble was in any sense the attorney of the plaintiff. He
does not state that the plaintiff employed him. It appears
from his testimony that the parties could not raise the money
to pay the claim and that he thereupon declined to have any-
thing more to do with the matter. Mrs. Wills' conversations
were with Mr. Trimble and not with the plaintiff. It does
not appear that Mr. Trimble reported to the plaintiff what
took place between him and Mrs. Wills. The interviews be-
tween Mrs. Wills and Mr. Trimble occurred before the second
sheriff's sale. Mrs. Wills then understood that Mr. Trimble
was acting for the plaintiff and his mother. No plan was pro-
posed to the plaintiff by the defendants by which the property
might be purchased by means of a loan to be placed upon it;
nor was the plaintiff personally requested to unite with the
defendants in an effort to avoid a sheriff's sale. No attempt
was made at the second sale to secure the property for the
plaintiff's daughters. The court submitted to the jury the
question whether the plaintiff acted in bad faith towards his
cotenants and whether he attempted to take the property away
from the joint owners and pass it over to his children, and the
jury was instructed that if he so acted such conduct was not
fair and right in law and would estop the plaintiff from assert-
ing a title afterwards. This instruction is made the subject
of the 8th, 9th and 10th assignments of error. The title ac-
quired by a joint owner adversely to his cotenants is not ab-
solutely void. It may be ratified by those whose interests are
affected and thereby become a valid title. Under some cir-
cumstances the conduct of a joint owner before a sheriff's sale
might be evidence of a waiver of his right, but clear and satis-
factory evidence should be required of such waiver. We do
not find evidence from which an estoppel could be sustained
against the plaintiff. If he had been able to provide funds and
secure a title to his daughters through a sheriff's sale the prop-
erty would thereby have been relieved in the interest of all of
the owners, but the plaintiff would have been entitled to reim-
bursement from his cotenants. It is not a fraud, either actual

or constructive, for a joint owner to purchase real estate sold at sheriff's sale to enforce payment of taxes or a municipal claim.   The duty rested upon each of the owners to discharge the liability, and payment by one is presumed to have been in behalf of all.   The defendants had notice before the first sheriff's sale of the design of Mr. Trimble to bid in the property for the plaintiff's daughters and also knew that this plan had not been carried out.   The project failed before the sale at which the defendants acquired title.   The acquiescence of the plaintiff in this plan would not estop him from asserting his right under a sale which he did not attend and with which he did not interfere.   The evidence at most bears upon a question of waiver by the plaintiff and an election to permit the defendants to acquire title.   What the plaintiff appears to have done was to consent to Mr. Trimble's plan to buy in the property for the girls, and in the event that it was so acquired to execute a quit-claim deed for his interest therein.   Whether he would have done so if he had understood that an arrangement could be made by which the money necessary to discharge the liens could be obtained on the credit of the property, as was subsequently done by the defendants, is not disclosed by the testimony.   We think it does not clearly appear from the evidence presented that the plaintiff, either before or after the sale, waived his right to call for his share of the property remaining after the defendants were reimbursed for their outlay.   Facts may exist which were not disclosed at the trial which would throw additional light upon this question.   If unfairness and bad faith are to be imputed to the plaintiff because he was willing that Mr. Trimble should provide the money to acquire the title for his daughters, the defendants would be under the same imputation in having bought the property and asserting a title against their cotenants.   We think the case does not turn upon the question of estoppel or fraud, and that the 8th, 9th and 10th assignments of error should, therefore, be sustained.

It is not clearly shown that the plaintiff understood that he was paying rent to the defendants.   His title, if otherwise good, could not be defeated by the testimony offered upon this point.

The judgment is reversed and a venire facias de novo awarded.