PHINEAS B. MARR

*v.*

WILLIAM B. MARR and BEACON LAND COMPANY.

[Submitted March 15th, 1907. Decided March 22d, 1907.]

1. A director of a corporation may purchase the corporation property sold under an execution on a judgment obtained by him against the corporation, and the sale will not be set aside because of his trust relationship, unless some undue advantage has been secured by reason of that position.

2. In an action by a stockholder of a corporation to set aside a sale of the corporate property under an execution on a judgment obtained by a director against the corporation to the director, the fact that notice of the sale, other than the statutory notice, was not given to all the stockholders was insufficient to show that the director had taken any undue advantage.

The bill is filed by complainant, as a stockholder of Beacon Land Company, in behalf of himself and other stockholders, to

set aside a sale made by the sheriff of Ocean county to defendant William A. Marr under an execution issued on a judgment held by defendant Marr against the land company. The land company having ceased the transaction of business, and having no organized board of directors, complainant seeks to enforce such rights as could have been appropriately enforced at the instance of the company in behalf of its stockholders.

In the year 1898 the Beacon Land Company was indebted to defendant Marr for money which he had prior to that time loaned to it. On failure of the company to make payment, defendant Marr brought suit and recovered judgment. On an execution issued on that judgment the sheriff of Ocean county made sale of the hotel property now in question, known as "Beacon-by-the-Sea." The property consisted of the hotel lots, buildings and furniture, and comprised all of the property of the land company. At the sale the property was purchased by defendant Marr, as plaintiff in execution. At that time defendant Marr was president and a director of the land company. The theory of complainant's suit is that by reason of the trust relationship at that time existing between the land company and defendant Marr, as its president and one of its directors, the title which he received by that purchase will be decreed to be held by him in trust for the benefit of the stockholders of the land company and an accounting ordered. Final hearing has been had on bill, answer of defendant Marr, replication and proofs.

*Messrs. Bleakly & Stockwell,* for the complainant.

*Mr. Thomas B. Hall,* for the defendant Marr.

LEAMING, V. C.

It is a general principle of equity, firmly established and frequently applied in this court, that if a trustee becomes the purchaser of the trust property, such act is voidable at the instance of the *cestui que trust.* The rule is adopted from wise considerations of public policy with a view to remove from transactions

by trust agents the danger attendant upon the existence of personal interests inconsistent with trust duties. In *Staats* v. *Bergen,* 17 N. J. Eq. (*2 C. E. Gr.*) 554, 559, the learned chief-justice, speaking for the court of errors and appeals, said:

"I think, upon correct principle, a trustee, in no case, nor in any crisis, can become the purchaser of property when the fact of his making such purchase has a tendency to promote his own interest at the expense of his *cestui que trust.* This, it is conceived, is the groundwork of the decisions in England and in this country."

The rule has been uniformly applied in this state to purchases by a trustee at public sales, and also at judicial sales, to the same extent as to sales made by the trustee in cases where the purchaser has a duty to perform in reference to the sale inconsistent with the character of a purchaser. *Staats* v. *Bergen, supra; Marshall* v. *Carson, 38 N. J. Eq.* (*11 Stew.*) *250; Romaine* v. *Hendrickson's Executor, 27 N. J. Eq.* (*12 C. E. Gr.*) *162; Creveling* v. *Fritts, 34 N. J. Eq.* (*7 Stew.*) *134; Porter* v. *Woodruff, 36 N. J. Eq.* (*9 Stew.*) *174; Deegan* v. *Capner, 44 N. J. Eq.* (*17 Stew.*) *339.*

A director of a corporation is not a trustee in the strict sense. The title to the corporate property is in the corporation. But the duties which a director is required to perform for the corporation which he represents are in many respects similar to the duties of a trustee, and his relation to the corporation is, in general, essentially that of a trustee. He is not, in consequence, allowed that freedom to contract with his corporation which a stranger could enjoy. In *Stewart* v. *Lehigh Valley Railroad Co., 38 N. J. Law* (*9 Vr.*) 522, it is shown that his trust relationship to his corporation is such as to render his contracts made with it voidable to the extent that such contracts cannot be enforced, as express contracts, against the will of the corporation. He may loan money to his corporation or perform personal service for his corporation, and the obligation for the repayment of the money loaned or for the payment of reasonable compensation for the service performed will arise by operation of law, but cannot exist by force of the express contract. *Gardner* v. *Butler, 30 N. J. Eq.* (*3 Stew.*) *702, 721.*

In the present case defendant Marr, while a director, loaned to his corporation money which was at that time needed by the corporation, and which was used by it in its regular business. After repeated efforts upon the part of defendant Marr to induce the corporation to repay the money due to him he was compelled to bring suit and to issue execution on the judgment procured and make sale of the property of the corporation. It is now contended upon the part of complainant that the trust relationship which existed between the corporation and defendant Marr, as its president and one of its directors, denied to him the right to become a purchaser at the sale made under his execution.

I have not been able to reach the conclusion that the principles already stated can be properly extended to render such a sale invalid at the mere option of the corporation or its stockholders. Conditions may easily exist to justify a decree setting aside such a sale, for the purchase of the property of a corporation by its director, even under the circumstances named, may appropriately subject the transaction to the closest scrutiny in all its aspects as to fairness and good faith, but I entertain the view that something more is necessary to set aside such a sale than the mere exercise of a purpose to do so upon the part of the corporation or its stockholders. To deny to the judgment creditor the privilege to buy at such a sale is to deny to him a substantial right which may be essential to the effective enforcement of his judgment. His attitude of hostility to his corporation has, in such a case, become a necessity which has been brought about and made necessary by the wrongful conduct of the corporation. I find it difficult to recognize the undoubted right of a director to occupy the attitude of hostility to his corporation which arises in the enforcement of his claim by an action at law to compel payment and to deny to him the right to enforce the judgment procured · with all the privileges which are incident to the judgment. In the exercise of that attitude of hostility, which is made necessary for the enforcement of his just claim against his corporation, it would seem that he should be entitled to the full privileges of a stranger, not only in the prosecution of his action, but as well in the enforcement of his judgment. If the evidence discloses that

he has in fact exercised no other privileges, I think the sale should stand. It is urged by complainant that he should first resign, and thus render himself free to act. Such a course would ordinarily be empty and fruitless and equally subject to judicial investigation. When the facts disclose that he has not used his office to his own advantage, I cannot recognize the necessity or propriety of the application of a principle which operates, in such a case, to render the sale invalid at the mere instance of the corporation. In treating such sales as voidable, I think they should be so treated only to the extent that other judicial sales are so treated. If an inadequate amount has been bid, the law court from which the execution issued can afford an adequate remedy. *Palladino* v. *Hilpret, 72 N. J. Eq. (2 Buch.) 270.* If unfair advantage has arisen attributable to a trust relationship this court can appropriately grant relief.

I have found but little assistance in the adjudicated cases upon the subject. The case of *Twin-Lick Oil Co.* v. *Marbury, 91 U. S. 587,* which is frequently cited in support of the right of the director-creditor to purchase, goes no further than to support the right in the case of a sale made by the trustee of a mortgage deed given by the corporation to secure a debt due to the director, and the suggestion is there made that the trustee making the sale is appointed by the corporation for the purpose and to that extent represents the corporation. *Saltmarsh* v. *Spaulding, 147 Mass. 224,* is to the same effect as *Twin-Lick Oil Co.* v. *Marbury, supra.* The case of *Lucas* v. *Friant, 111 Mich. 426, 436,* expressly holds that a director who is a judgment creditor may buy at the execution sale, but the decision is based on *Twin-Lick Oil Co.* v. *Marbury, supra,* and *Saltmarsh* v. *Spaulding, supra,* and other cases which do not fully support the text. The case of *Hoyle* v. *Plattsburgh and Montreal Railway Co., 54 N. Y. 315, 329,* after holding that a director who is not a judgment creditor cannot purchase the property of his corporation at a judicial sale, proceeds as follows:

"Vilas, however, was not only a director; he was also the plaintiff in a judgment against the railroad company, and had a clear right to sell, upon execution on his judgment, the personal

property of the corporation which was liable to sale on execution. Whether in this right he might not, at a sale under his own or under prior executions, purchase in protection of his own right as judgment creditor, and hold property so purchased absolutely against the company, need not be determined in this case."

The subsequent case of *Preston* v. *Loughran, 58 Hun 210, 214; S. C., 12 N. Y. Supp. 313, 316,* refers to *Hoyle* v. *Plattsburgh and Montreal Railway Co., supra,* and proceeds as follows:

"He (the director of a corporation) is not absolutely excluded from the right of dealing with it. He can loan money to it and become its creditor, and he can receive by the act of the corporation security for his debt. If he has a mortgage security he may foreclose the mortgage, and it follows, almost of necessity, that if he can foreclose he may protect himself by bidding at the sale. Of course, if he takes any undue advantage, another question arises. But when his acts are fair and open they are not invalid."

In *Hallam* v. *Indianola Hotel Co., 56 Iowa 178,* the same view is taken, and *In re Iron Clay Brick Co., 19 Ont. Rep. 113; S. C., 33 Am. & Eng. Corp. Cas. 277,* the contrary view is adopted.

I think that both reason and authority must be said to support the view already stated that a director in the enforcement of his execution against his corporation is privileged to purchase at the execution sale, and that the sale will not be set aside because of his trust relationship arising from the fact that he is a director, unless it appears that some undue advantage has been taken by him by reason of the position which he occupies.

It is urged in behalf of complainant that the conduct of defendant Marr was not fair and open in that he should have given notice of the sale to all the stockholders. I am unable to concur in that view. From the evidence adduced at the hearing I am satisfied that defendant Marr must be regarded in this case as the victim of the corporation rather than as one who has received undue advantage. The corporation had but few stockholders and was essentially the enterprise of a brother of defendant Marr, now deceased, whose stock complainant now holds by inheritance.

Defendant Marr originally advanced a small amount of money to the corporation and also became a stockholder at the instance of and as a favor to his brother. As more money was needed by the corporation from time to time, defendant Marr was induced to make further advances because no other person identified with the enterprise appeared to be able to do so, and because of his desire to help the enterprise along on account of his brother's active interest in it. The advances thus made finally aggregated over $10,000, and over $2,000 had in the meantime, in like manner, been advanced by the wife of defendant Marr. After the death of his brother defendant Marr, at a meeting of the stockholders in December, 1897, stated that he must have the money due to him, and that he would proceed unless something was done. He also urged the stockholders to contribute and also offered to turn over his claim to anyone who would supply the money. Again, at a meeting of the stockholders in February, 1898, he urged payment and stated that he would proceed to collect unless paid. At one of these meetings a committee was appointed to make public sale of the entire property of the company. The sale was undertaken by a Philadelphia auction-house in April, 1898, and no bids were received. Mrs. Marr had, in the meantime, brought suit for the money due to her, and recovered judgment for $2,088.15. In October, 1898, defendant Marr brought suit for the money due to him and recovered judgment for $10,318.30, and in December, 1898, made sale of the property in question under an execution issued on that judgment. The judgment recovered by his wife had, in the meantime, been assigned to him. While no notice of the sale was given to the several stockholders, other than the statutory notice, I am entirely satisfied that it would have been utterly futile to have given such notice. Defendant Marr had earnestly tried to get the stockholders to interest themselves in raising the money due to him and had found it impossible. It is entirely clear to me that had each stockholder been personally notified of the day of sale no attention whatever would have been given to the matter by any of them. Defendant Marr did not want the property. He was judge of a court in Pennsylvania and did not wish to be

burdened with the ownership of a seashore hotel property, and especially one which had been found from the beginning to afford insufficient revenues to maintain it. His instructions to the attorney whom he employed to make the sale were to let the property be sold for less than was due on his judgments if a purchaser could be found. I am satisfied that the only reason that all parties in interest were not especially notified of the sale was because it was useless to do so. The property was purchased by defendant Marr at the sale because, and only because, no other purchaser could be found. No bid was made except that of defendant Marr. Since the purchase defendant Marr has found it necessary to continue to add to the investment in the hope of making the property remunerative, and at this time it stands him in about $40,000. I am unable to find any circumstance from which I can conclude that defendant Marr has not performed his full duty to the corporation.

Touching the value of the property purchased I think that, in the proper hands, a purchaser could have probably been found for more than the amount of the judgments of defendant Marr. Witnesses at the hearing believe that the property, at the date of the sale, was worth at least $25,000. At the sale attempted in Philadelphia $18,000 was fixed as the price at which it should be sold. There was due to defendant Marr at the sale about $12,500. His bid was but $3,850. The small amount was bid because there were no other bidders, and it was sought to save sheriff's commissions. The bid was, in effect, from the standpoint of defendant Marr, the amount of the judgments, as the corporation had no other assets. If the property was in fact worth $25,000 at the date of the sale, it is entirely clear that neither defendant Marr, or anyone else connected with the corporation, had any such idea of its value. It is not improbable that subsequent developments have given an enhanced idea of values in the retrospect. But, as already stated, I do not conceive it to be the duty of this court to disturb this sale, under the circumstances of this case, on the ground of inadequacy of price.

The bill is filed at this late date, seven years after the sale, by the heir of the brother of defendant Marr, on reaching his

majority. At the time the transactions here occurred complainant had a guardian who attended the stockholders' meetings referred to at which proceedings were threatened to enforce the Marr claim. While I am not inclined to deny relief upon the ground of laches, the evidence clearly shows that the guardian of complainant had ample notice to apprise him that the Marr claim would probably be enforced by judgment. He testified: "I inferred that there would be a suit by the judge and a sale of the property."

I will advise a decree dismissing the bill.