### TIFFANY v. SMITH et al.

(Supreme Court, Special Term, Steuben County.　June 27, 1910.)

1. CORPORATIONS (§ 320*)—DIRECTORS—CONSPIRACY—EVIDENCE.

Evidence *held* insufficient to sustain a finding that certain directors and officers of a corporation conspired to ·wreck it in order that they. might acquire the property.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 320.*]

2. CORPORATIONS (§ 312*)—SALE OF PROPERTY—PURCHASE—INTERESTS OF STOCKHOLDERS.

Where the estate of the father of one of the directors of a corporation was liable on the corporation's notes, sought to be enforced against the corporation by execution sales of its assets, the executor of the estate was entitled to bid at the sale in order to protect the estate; and hence his subsequent arrangement, after purchasing such assets, to convey the property to his brother and certain of the other directors of the corporation on condition that they would take care of the check he had given to the sheriff for the purchase price, and protect the estate from all liability by reason of the indorsement, was not fraudulent as to the remaining stockholders of the corporation so as to render such ultimate purchasers trustees of the property for their benefit.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 312.*]

3. CORPORATIONS (§ 312*)—SALE OF ASSETS—PURCHASE BY DIRECTORS.

Where directors and officers of a corporation were personally liable on its notes on which judgment had been rendered against the corporation, such directors were entitled to protect themselves on a judicial sale of the corporation's property, both as against the corporation and its stockholders, by purchasing the property for their own benefit.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 312.*]

4. CORPORATIONS (§ 320*)—SALE OF ASSETS—PURCHASE BY DIRECTORS—TRUST FOR STOCKHOLDERS.

Judgment having been recovered against a corporation on July 31, 1897, its property was sold under execution 10 days thereafter. and purchased by the executor of the estate of an indorser of the corporation's notes, and by him transferred to his brother and associates, who were directors of the corporation, under an agreement to pay the check given. the sheriff for the purchase price and to release the executor's estate from liability on the indorsement. This transaction having been carried out, defendants invested a large sum in the improvement of the business and property of the corporation without any claim on behalf of plaintiff or the other stockholders to interest therein until 5½ years thereafter, when on January 24, 1903, plaintiff, a former stockholder, sued to declare a trust of the assets and business of the corporation for the benefit of the old stockholders. *Held*, that the plaintiff's right to relief was barred by laches.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 320.*]

5. CORPORATIONS (§ 622*)—INSOLVENCY—RECEIVERS—SALE OF ASSETS.

Where a corporation had been dissolved and its property placed in the hands of a receiver, persons who had been directors of the corporation owed no duty to the stockholders in respect to a sale of the corporation's real estate by the receiver, but were entitled to purchase for their own benefit.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 622.*]

Action by Henry C. Tiffany, in his own behalf and in behalf of all others similarly situated who shall join in the action, against H. Wilmot Smith and others, to procure a decree that defendants have ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

quired the property formerly owned by the Schad Wheel Company, as trustee of plaintiff and other stockholders of the corporation, and for an accounting of the rents, issues, and profits of the property since July 21, 1897; that a trustee be appointed to take charge of the property, and manage, control, and operate the same for the stockholders of the corporation, and for other and further relief. Complaint dismissed.

See, also, 121 App. Div. 929, 106 N. Y. Supp. 1147; 123 App. Div. 911, 107 N. Y. Supp. 1147.

Sebring & Cheney, for plaintiff.
Monroe Wheeler, for defendant John J. Ellis.
William H. Nichols, for defendant John H. Pettit.
James McCall, for defendant H. Wilmot Smith.

FOOTE, J. The defendants were three of the five directors of the Schad Wheel Company, a corporation carrying on the business of manufacturing wagon wheels at Avon, N. Y. They were also the principal officers of the corporation. They are charged in the complaint with fraudulently, collusively, and wrongfully entering into a fraudulent scheme and conspiracy to conceal from the plaintiff and other stockholders the financial condition of the corporation and to mismanage its affairs and neglect and abuse their official positions and ruin the corporation and force the sale of its property for the purpose of acquiring the same for their own personal benefit, profit, and advantage, and that, to carry out such fraudulent scheme and conspiracy, they represented to the plaintiff and other stockholders that the affairs of the company were in good financial condition and the business prosperous, for the purpose of deceiving said stockholders and inducing them to place trust and confidence in the defendants, and that, in furtherance of their said fraudulent scheme and conspiracies, they secretly and collusively neglected to look after certain indebtedness of the corporation, and did induce certain creditors to bring actions in this court against the corporation, and concealed from the stockholders the fact that such actions had been brought, and fraudulently and collusively suffered judgments to be taken and the property of said corporation levied upon by executions for the purpose and intent to appropriate to themselves, such property and induce the sheriff to levy upon and sell such property, and employed one O. Park Smith to purchase the same for their benefit.

This is the substance of the cause of action alleged, although many other details of the supposed fraudulent conspiracy are set forth including the fact that the banks holding the commercial paper of the corporation upon which those suits were brought were in collusion with defendants, to aid them in their fraudulent conspiracy to acquire this property for their own benefit to the exclusion of the stockholders.

The evidence given upon the trial comes far short of proving the very serious charges made in the complaint. There was no conspiracy between the defendants; there was no collusion between them and the banks. The banks declined to carry the paper of the Schad Wheel

Company any longer, unless those directors would consent to indorse an additional note of $2,000 which one of the banks had been carrying for a number of years without indorsement, and these directors were unwilling to incur such further personal liability; hence the banks brought suits upon their notes. The defendants, acting for the corporation, employed an attorney to put in a defense and to serve an answer in those suits, setting up the defense of usury. But he overlooked the requirement of the Code that in actions against corporations upon commercial paper an order of a judge of the court must be made and served with the answer, permitting the issues raised by the answer to be tried; otherwise the plaintiff may proceed as upon default. And thus, much to the surprise and disappointment of these defendants, the sheriff took possession of the factory of the Schad Wheel Company one Saturday afternoon on executions issued upon judgments which had been taken in these suits as upon the default of the corporation to plead. The credit of the corporation was none too good at this time. Business in general had not recovered from the financial depression of 1893 and 1894. Defendants had counted upon having two or three months' additional time in which to place these loans elsewhere by means of the delay which they had expected the service of these answers would effect until the next term of court. They had been actively engaged in seeking to place these notes elsewhere; but the blow to the company's credit caused by the seizure of its property on these executions put an end to these negotiations. Directors' and stockholders' meetings were at once held, and a committee of the stockholders appointed to wait upon the banks who held the company's paper to try to make arrangements which would obviate the sale of its property and allow its business to continue, but without success. The property was advertised for sale, and on the day of the sale no arrangements, so far as appears, had been made by the defendants or any one else connected with the company for purchasing the property.

The evidence would not sustain a finding that prior to the day of the sale the defendants had been guilty of any fraud, collusion, or want of good faith toward the company or its stockholders; hence, there can be no recovery by the plaintiff on this branch of the case. But it is claimed that the purchase at the sheriff's sale by O. Park Smith, a brother of the defendant Smith, was a purchase by the defendants, and that he was the defendants' agent for that purpose.

I am satisfied that this was not the case. It is true that O. Park Smith was a brother of the defendant Smith, and that he was a man of little or no financial responsibility; but it appears that he was one of the executors of his father's estate, which was a considerable estate, and that this estate was liable upon the notes held by these banks by reason of his father's indorsement of the notes in his lifetime, and that he, therefore, had an interest to see that the property was made to produce as much as possible upon the sale to relieve the estate of which he was executor. I am satisfied that he bid at the sale without expecting or intending to become a purchaser, for the purpose of compelling the banks or others who might be bidders to give

a fair price for the property. And I am further satisfied that prior to the time the property was struck off to him he had no arrangement or understanding with the defendants, or either of them, that he was to purchase for their benefit or that they would take the property off his hands. Such an arrangement was made, however, within a few hours after the sale, on condition that the defendants should take care of the check which he had given to the sheriff for the purchase price, and on condition that the defendants would protect his father's estate from all liability by reason of his father's indorsement upon these notes.

But if the immediate transfer of his bid to the defendants is to be treated as a purchase of this property by the defendants indirectly through him within the rule stated by Mr. Justice Allen in Abbot v. American Hard Rubber Co., 33 Barb. 578, still I think the plaintiff is not entitled to relief on that ground in this action. While, generally speaking, a purchase of property of a corporation at judicial sale by one of its directors is voidable by the corporation, I think it was not so in this case. The defendants were personally liable upon those notes. They had indorsed the notes for the benefit of the Schad Wheel Company, and as against that company and its stockholders they were entitled to protect themselves upon the judicial sale of the company's property, exactly as they would have been entitled had they themselves loaned the money to the company and found it necessary to resort to judicial proceedings for its collection. In such case, the weight of authority seems to be that it would have been their right and privilege to have purchased the company's property upon the sale for their own protection. Preston v. Loughran, 58 Hun, 210, 12 N. Y. Supp. 313; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Marr v. Marr, 72 N. J. Eq. 797, 66 Atl. 182; Hoyle v. P. & A. H. R. R. Co., 54 N. Y. 314, 13 Am. Rep. 595.

There is another insurmountable objection to the plaintiff's position in this case arising out of the long delay in commencing this action. The judgments were recovered against the company on the 31st of July, 1897. The execution sale took place within 10 days thereafter. This action was begun on the 24th of January, 1903. Thus, the plaintiff waited about 5½ years before applying to a court of equity for relief, when he and the other stockholders knew within a few days after the execution sale that the defendants had acquired the property and were proceeding to continue the business formerly conducted by the Schad Wheel Company. During that 5½ years the defendants invested a large amount of money in the improvement of the business and property, while the plaintiff and his co-stockholders stood by apparently waiting to see whether the business would prove a success before deciding to bring this action. Courts of equity are not in the habit of granting relief based wholly upon technical right to avoid a sale of this character to one who is in the position of trustee, where the complainant is guilty of gross laches in delaying to assert his rights and where it would be grossly inequitable to do so by reason of the changes in the condition of the property brought about by lapse of time and the investment of additional capital and

labor by the defendants.   Twin-Lick Oil Co. v. Marbury, supra; Barr v. N. Y., L. E. R. R. Co., 125 N. Y. 263, 26 N. E. 145; Scholle v. Scholle, 101 N. Y. 167, 4 N. E. 334.

The subsequent purchase by the defendants of the real property of the Schad Wheel Company from its receiver is not open to the objection that the defendants were directors, for the Schad Wheel Company had then been dissolved, and its property was in the hands of a receiver appointed by the court, and the defendants owed no duty to the stockholders of the Schad Wheel Company in respect to a sale made by the receiver.

These views render it unnecessary to consider the other questions involved in this case, namely, as to whether the plaintiff can maintain this action without tendering or offering to pay to the defendants the amount paid by them for the property, and as to whether plaintiff should have called upon the two directors of the company, other than the defendants, to bring this action as trustees by statute after dissolution, and, on their refusal, to have made them defendants and alleged such demand and refusal in the complaint.   This last question was not ruled upon by the courts in disposing of the demurrer of the defendant Ellis to the complaint.   Tiffany v. Ellis, 194 N. Y. 539, 87 N. E. 1128.   It has been ably presented on the briefs of counsel; but, as it is not necessary to a decision of the case, I express no opinion upon it at this time.

Defendants are entitled to judgment dismissing the plaintiff's complaint upon the merits.   Two bills of costs are awarded to the defendants, one in favor of the defendant Ellis and one in favor of the other defendants.

Findings may be submitted, which will be settled upon two days' notice.